UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WASTE MANAGEMENT OF LOUISIANA, LLC | CIVIL ACTION |
| VERSUS | NO. 11-2405 |
| RIVER BIRCH, INC.,<br>HIGHWAY 90, LLC,<br>FREDERICK R. HEEBE, and<br>ALBERT WARD, JR. | SECTION "N" (4) |

**ORDER AND REASONS**

Presently before the Court is Defendant Frederick R. Heebe's motion (Rec. Doc. 69) seeking dismissal of Counts I, II, III, and VII of Plaintiff Waste Management of Louisiana, LLC's amended complaint (Rec. Doc. 10).[1] As stated herein, **IT IS ORDERED** that the motion is **GRANTED IN PART** and **DENIED IN PART**.

**BACKGROUND**

In this suit, Plaintiff alleges that it "directly (and FEMA and the citizens of greater New Orleans as a necessary consequence) suffered injuries as a result of the corrupt and anti-competitive tactics employed by Defendants to satisfy their greed following the devastation of New Orleans caused by Hurricane Katrina." See Rec. Doc. 89, p. 2. Specifically, Plaintiff contends that Defendants conspired with Henry Mouton, former Commissioner of the Louisiana Department of Wildlife and Fisheries, certain former Jefferson Parish officials, Shadowlake Management, Inc., and

---

[1] This motion has been adopted by Defendants Highway 90, LLC, River Birch, Inc., and Albert J. Ward, Jr. See Rec. Docs. 70, 74, and 76.

other unnamed persons, to eliminate competition from other New Orleans area landfills relative to the collection and disposal of debris from Hurricane Katrina and with respect to municipal waste disposal in Jefferson Parish. Based on these allegations, Plaintiff has asserted claims against Defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1962(c) and (d) (Counts I and II); the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401, et seq. (hereinafter and commonly referred to as "LUTPA")(Count III); the Louisiana Antitrust Law, La. R.S. 51:121, et seq. (Counts IV-VI); and Louisiana Civil Code article 2324 (Count VII). At issue for purposes of the instant motion are Plaintiff's claims under RICO, LUTPA, and Louisiana Civil Code article 2324 (Counts I-III and VII). The parties agree that a viable civil conspiracy claim exists for purposes of Louisiana Civil Code article 2324 (Count VII) only if one or more of the other claims survives. See Rec. Doc. 69-1, p.12; Rec. Doc. 89, pp. 43-44. Thus, the Court's rulings relative to Counts I, II, and III likewise apply to Count VII.

## LAW AND ANALYSIS

Rule 8 of the Federal Rules of Civil Procedure requires that complaints provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). Although a complaint does not need "detailed factual allegations, . . . more than labels and conclusions are necessary, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations and quotations omitted); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Similarly, in evaluating motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v.*

*Allain*, 478 U.S. 265, 286 (1986); *see also Iqbal,* 556 U.S. at 678 ("tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557); *see also Christopher v. Harbury*, 536 U.S. 403, 416 (2002) (elements of a plaintiff's claim(s) "must be addressed by allegations in the complaint sufficient to give fair notice to a defendant").

Further, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the *reasonable* inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Factual allegations that are "merely consistent with a defendant's liability, stop short of the line between possibility and plausibility of entitlement to relief," and thus are inadequate. *Id.* (internal quotations omitted). Rather, a complaint's allegations "must make relief plausible, not merely conceivable, when taken as true." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009); see also *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).").

"Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679 (internal citations omitted). See also *Robbins v. Oklahoma*,

3

519 F.3d 1242, 1248 (10th Cir. 2008) (degree of required specificity depends on context, *i.e.*, the type of claim at issue). And, in evaluating motions to dismiss filed under Rule 12(b)(6), the Court "must accept all well-pleaded facts as true, and . . . view them in the light most favorable to the plaintiff." *Campbell v. Wells Fargo Bank, N.A.,* 781 F.2d 440, 442 (5th Cir.), *cert. denied,* 476 U.S. 1159 (1986). Further, "[a]ll questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor." *Lewis v. Fresne,* 252 F.3d 352, 357 (5th Cir. 2001). Nevertheless, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – "that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 678 (quoting Fed. Rule Civ. P. 8(a)(2)).

A.   RICO

RICO provides a private cause of action to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). Section 1962, which contains RICO's criminal provisions, makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." See 18 U.S.C. §1962(c). Conspiring to violate §1962(c) also is unlawful. See 18 U.S.C. §1962(d).

An "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C. §1961(5). "'[R]acketeering activity' means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances

4

Act), which is chargeable under State law and punishable by imprisonment for more than one year. . . . ." 18 U.S.C. §1961(1). "A 'pattern of racketeering activity' requires at least two acts of racketeering activity . . . ." 18 U.S.C. §1961(5).

In *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258 (1992), the Supreme Court set forth the standard of causation applicable to civil RICO claims. See *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1 (2010)(citing *Holmes*, 503 U.S. at 268-74). Specifically, to state a civil claim under RICO, the plaintiff is required to show that a RICO predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well." *Hemi Group*, 559 U.S. at 8-9 (citing *Holmes*, 503 U.S. at 268). Proximate cause, which is evaluated in light of its common-law foundations, requires "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* at 9 (internal citations omitted). "A link that is 'too remote,' 'purely contingent,' or 'indirect' is insufficient. *Id.* (citing *Holmes*, 503 U.S. at 271, 274).

1. Chef Menteur Landfill

Plaintiff provides a summary explanation of its RICO claim relative to the Chef Menteur landfill in section 16 of its RICO case statement. Specifically, Plaintiff contends:

> Defendants used the association-in-fact enterprise to give over $400,000 to Henry Mouton, then a Louisiana Department of Wildlife and Fisheries Commissioner, over the course of at least many years with the intent to influence his conduct in relation to his position, employment, and duties in violation of at least La. R.S. § 14:118. In return for these corrupt payments, Mr. Mouton, holding himself out as acting in his public, official capacity, and in the public interest, took multiple actions to benefit Defendants and harm Defendants' competitors. As pertaining to Waste Management, Mr. Mouton provided extensive assistance to the Defendants in fomenting governmental and public opposition to Waste Management's Chef Menteur landfill. These efforts eventually culminated in Mayor Nagin's decision to withdraw his emergency authorization for the Chef Menteur landfill, forcing it to close after less than six months of

operation. Because of this closure, Waste Management lost over $50 million in projected net revenues, plus millions more that had been invested in developing and gaining approval for the Chef Menteur landfill. But for the opposition that Mr. Mouton and Defendants artificially created, Mayor Nagin would not have withdrawn his emergency authorization for the Chef Menteur landfill. Further, Defendants' corrupt payments to Mr. Mouton were the proximate cause of the injuries to Waste Management's business and property as these injuries were the direct result of the actions taken by Mr. Mouton and the Defendants.[2]

Having carefully reviewed Plaintiff's amended complaint, together with its RICO case statement, the Court finds that Plaintiff has failed to state a viable RICO claim regarding the Chef Menteur landfill. In particular, Plaintiff's allegations do not satisfy its pleading burden relative to causation, that is, that the alleged RICO predicate offense – bribery of a Henry Mouton, a public official – was a "but for" and the "proximate cause" of the alleged injury–loss of the emergency authorization for the landfill.[3] In other words, Plaintiff has not alleged sufficient facts to allow a reasonable inference, as opposed to mere speculation, that former Mayor Nagin's withdrawal of Chef Menteur's authorization was *because of* actions by Mouton, taken as a result of bribery allegedly attributable to Defendants, rather than a mere coincidence.[4]

---

[2] See RICO Case Statement (Rec. Doc. 5, p. 16); see also Amended Complaint (Rec. Doc. 10), ¶¶34, 36-49.

[3] Plaintiff identifies bribes paid to Henry Mouton as the predicate acts of his RICO claims concerning the Chef Menteur landfill in both his amended complaint and RICO case statement. See Amended Complaint (Rec. Doc. 10), ¶ 91; RICO Case Statement (Rec. Doc. 5), pp. 8-11.

[4] In its opposition memorandum, Plaintiff argues that "Mayor Nagin's revocation of Chef Menteur's emergency authorization 'was a foreseeable and natural consequence of [Defendants'] scheme,' and, indeed, was the very purpose of putting Mouton on their illicit payroll of secret 'lobbyists.'" See Rec. Doc. 89, pp. 16-17. The pertinent inquiry, however, is the direct relationship between the defendant's unlawful conduct and the harm, not merely that the harm is foreseeable. See *Hemi Group,* 559 U.S. at 12.

Specifically, Plaintiff's complaint cites to only one letter from Mr. Mouton, dated April 6, 2006, to an official with the [U.S.] Environmental Protection Agency "and other officials" referencing "alleged violations at the Chef Menteur landfill site."[5] And, although Plaintiff alleges that Defendants "took other actions to successfully manufacture the appearance of 'public opposition'" to the Chef Menteur landfill, including causing radio host Garland Robinette to "routinely rail[]" against it and the Old Gentilly landfill, and causing New Orleans Councilperson Cynthia Willard-Lewis to reverse course and become a vocal opponent, Plaintiff offers no facts connecting this opposition to Mouton's conduct.[6] Indeed, Plaintiff avers that Robinette's and Willard-Lewis's opposition resulted from *other* misconduct by Defendants.[7] Similarly, neither Plaintiff's amended complaint nor RICO case statement offers facts (as opposed to concluory allegations) demonstrating more than a mere possibility that Nagin's withdrawal of the authorization was the result of Mouton's conduct.[8] Rather, to be actionable under RICO, Plaintiff's alleged injury is dependent upon a chain of causation that, as presently alleged, is missing vital links.

As stated above, the well-pleaded factual allegations of a plaintiff's complaint must

---

[5] See Amended Complaint (Rec. Doc. 10), at ¶ 41.

[6] See Amended Complaint (Rec. Doc. 10), at ¶¶ 43-44.

[7] *Id.*

[8] In its opposition memorandum, Plaintiff additionally contends that "new revelations suggest that Defendants may have committed additional predicate acts in their efforts to influence Mayor Nagin's decision"; specifically, giving "Mayor Nagin $20,000 in improper campaign contributions–funneled through shell companies that would avoid detection–shortly before his sudden and unexpected reversal on Chef Menteur's authorization." See Rec. Doc. 89, p. 4 n. 4, and p.13 n.7. This allegation is inconsistent with the predicate act (Mouton bribery) and "governmental and public opposition" theory outlined in Plaintiff's amended complaint and RICO statement. More importantly, however, factual assertions found in a plaintiff's memorandum, rather than his complaint, are insufficient to overcome a Rule 12(b)(6) motion to dismiss.

make the plaintiff's entitlement to relief plausible, not merely conceivable, to satisfy the pleading requirements of Rule 8 and overcome a Rule 12(b)(6) motion to dismiss. The Court finds, for the foregoing reasons, that Plaintiff has failed to accomplish this task. Thus, if Plaintiff desires to proceed further with this aspect of its RICO claims, a proper amendment of the complaint, in accordance with the instructions set forth below, will be necessary.

2. <u>Waste Management's Contract With Jefferson Parish</u>

In seeking dismissal of this aspect of Plaintiff's RICO claims, Defendants contend that Plaintiff "has not suffered any damages because its contract with Jefferson Parish has not been terminated and is still in effect today." See Rec. Doc. 69-1, pp. 3-6. In response, Plaintiff asserts that legal expenses incurred by it, because of "baseless and improper legal challenges believed to have been set in motion by Defendants," constitute a cognizable injury. Defendants counter by arguing that Plaintiff's claim nonetheless fails, as a matter of law, because the expenses were not caused by a RICO violation. See Rec. Doc. 69-1, pp. 7-8 (citing RICO Case Statement, Rec. Doc. 5, pp. 7-9).

Upon careful review of the parties' submissions, including Plaintiff's amended complaint and RICO case statement, and applicable law, the Court finds Plaintiff's allegations regarding Defendants' conduct vis-á-vis Plaintiff's waste disposal contract with Jefferson Parish to be legally sufficient to state a viable RICO claim. Specifically, Plaintiff has alleged that unlawful payments by "the River Birch Defendants"[9] induced former parish officials to cause Jefferson Parish to "initiate sham litigation" against Plaintiff in order to bring about the premature termination of Plaintiff's contract with the parish, and thereby allow Defendant River Birch, Inc.'s own contract

---

[9] Plaintiff refers to Defendant River Birch, Inc., its owners, officers and affiliated entities as, collectively, "the River Birch Defendants." See Amended Complaint, Rec. Doc. 10, ¶1.

to become effective.[10]   Given  these allegations, the Court finds the unnecessary legal expenses claimed by Plaintiff constitute a legally compensable RICO injury.  See *Lemelson v. Wang Laboratories, Inc.*, 874 F.Supp. 430, 432-33 (D. Mass 1994)(concluding legal fees expended as an intended consequence of racketeering activities may constitute RICO damages and distinguishing cases where litigation was not an instrument of the racketeering activity or an intended harm);  see also, e.g., *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1167-68 (2nd Cir. 1993)(awarding attorney's fees incurred as a result of defendants' conspiracy to prevent plaintiff from collecting outstanding judgments); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1105 (2nd Cir. 1988)(recoverable RICO damages included legal fees and expenses incurred in fighting defendants' frivolous lawsuits and in overcoming bribe-induced decision in another lawsuit).

B. LUTPA

Citing the September 23, 2011 filing date of Plaintiff's original complaint, Defendants assert that the one-year time period established by La. R.S. 51:1409(E) renders Plaintiff's LUTPA claim untimely.  Plaintiff disagrees, referencing related litigation between it and Jefferson Parish still pending as of September 23, 2011,[11] and invoking the "continuing tort doctrine." See Rec. Doc. 89, pp. 89-90.  In response, Defendants contend that the allegations of Plaintiff's complaint are not sufficient to establish the applicability of the continuing tort doctrine.

The Court agrees with Defendants.  Application of the continuing tort doctrine requires continual unlawful acts; "the continuation of the ill effects of an original, wrongful act" are

---

[10]   See Amended Complaint (Rec. Doc. 10), at ¶¶ 54, 58-65, and 68-69; RICO Case Statement (Rec. Doc. 5), at pp. 3, 5-9.

[11]   See *Jefferson Parish Consolidated Garbage District No. 1 et al. v. Waste Management of Louisiana, L.L.C. et al.*, Civil Action No. 09-6270, Section "G" (E.D. La.).

not enough. See *Crump v. Sabine River Auth.*, 737 So. 2d 720, 726, 728-29 (La. 1999). Conclusory allegations that Defendants' "actions are continuing in nature" and that Plaintiff's "injuries continue to this day,"[12] however, are not sufficient to render Plaintiff's LUTPA timely pursuant to the continuing tort doctrine. Nor, standing alone, is the mere fact that related litigation between Plaintiff and Jefferson Parish had not concluded as of September 23, 2010. Rather, to allege a facially timely LUTPA claim, Plaintiff must amend its complaint to set forth facts reflecting that pertinent conduct by and/or attributable to Defendants continued into the year prior to the date Plaintiff filed suit.

## **CONCLUSION**

As explained herein, the Court finds that Plaintiff's amended complaint, as presented, fails to state a legally viable claim, under RICO, relative to the Chef Menteur landfill, and under LUTPA. Accordingly, Defendant's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. **IT IS FURTHER ORDERED** that, if Plaintiff desires to proceed further with its RICO claim regarding the Chef Menteur landfill and its LUTPA claim, it must seek leave, no later than thirty (30) days from the entry of this Order and Reasons, to file a second amended and superseding complaint remedying the pleading deficiencies identified herein relative to those claims. The second amended and superseding complaint must include all of the allegations from Plaintiff's original and first amended complaints (Rec. Docs. 1 and 10) on which it continues to rely, as well as its additional allegations, such that the case can proceed on the basis of the second amended and superseding complaint without requiring further reference to the original or first amended complaint.

---

[12] See Amended Complaint (Rec. Doc. 10), at ¶¶ 73 and 106.

If Plaintiff cannot, or does not, cure these deficiencies by timely amendment, the Court shall, upon appropriate motion by Defendants, order its dismissal of these claims to be with prejudice.

New Orleans, Louisiana, this 31st day of March 2014.

_____
**KURT D. ENGELHARDT**
**United States District Judge**