UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

WASTE MANAGEMENT OF LOUISIANA, LLC                    CIVIL ACTION

VERSUS                                                NO. 11-2405

RIVER BIRCH, INC.,                                    SECTION "N" (4)
HIGHWAY 90, LLC,
FREDERICK R. HEEBE, and
ALBERT WARD, JR.

## ORDER AND REASONS

Presently before the Court is the "Motion to Dismiss under Rule 12(b)(6)" filed by

Defendants River Birch, Inc. and Highway 90, LLC  (Rec. Doc. 71), which seeks dismissal of

Counts IV, V, and VI of Plaintiff Waste Management of Louisiana, LLC's amended complaint (Rec.

Doc. 10).[1]  **IT IS ORDERED** that the motion is **GRANTED** to the extent stated herein.

## BACKGROUND

In this suit, Plaintiff alleges that it "directly (and FEMA and the citizens of greater

New Orleans as a necessary consequence) suffered injuries as a result of the corrupt and anti-

competitive tactics employed by Defendants to satisfy their greed following the devastation of New

Orleans caused by Hurricane Katrina."  See Rec. Doc. 89, p. 2.  Specifically,  Plaintiff contends that

Defendants conspired with Henry Mouton, former Commissioner of the Louisiana Department of

Wildlife and Fisheries, certain former Jefferson Parish officials, Shadowlake Management, Inc., and

---

[1]        This motion has been adopted by Defendants  Frederick R. Heebe  and Albert J.
Ward, Jr.  See Rec. Docs. 72, 73 and 76.

other unnamed persons, to eliminate competition from other New Orleans area landfills relative to the collection and disposal of debris from Hurricane Katrina and with respect to municipal waste disposal in Jefferson Parish.   Based on these allegations, Plaintiff has asserted claims against Defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1962(c) and (d) (Counts I and II);  the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401, et seq. (hereinafter and commonly referred to as "LUTPA")(Count III); the Louisiana Antitrust Law, La. R.S. 51:121, et seq. (Counts IV-VI); and Louisiana Civil Code article 2324 (Count VII).   At issue for purposes of the instant motion are Plaintiff's Louisiana antitrust claims (Counts IV, V, and VI).

## LAW AND ANALYSIS

Rule 8 of the Federal Rules of Civil Procedure requires that complaints provide a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. Proc. 8(a)(2).  Although a complaint does not need "detailed factual allegations, . . . more than labels and conclusions are necessary, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations and quotations omitted);  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Similarly, in evaluating motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986);  *see also Iqbal,* 556 U.S. at 678 ("tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

2

*Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557);  *see also Christopher v. Harbury*, 536 U.S. 403, 416 (2002) (elements of a plaintiff's claim(s) "must be addressed by allegations in the complaint sufficient to give fair notice to a defendant").

Further, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the *reasonable* inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Factual allegations that are "merely consistent with a defendant's liability, stop short of the line between possibility and plausibility of entitlement to relief," and thus are inadequate. *Id.* (internal quotations omitted).  Rather, a complaint's allegations "must make relief plausible, not merely conceivable, when taken as true." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009); see also *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).").

"Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679 (internal citations omitted).  See also *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (degree of required specificity depends on context, *i.e.*, the type of claim at issue).  And, in evaluating motions to dismiss filed under Rule 12(b)(6), the Court "must accept all well-pleaded facts as true, and . . . view them in the light most favorable to the

plaintiff." *Campbell v. Wells Fargo Bank, N.A.,* 781 F.2d 440, 442 (5th Cir.), *cert. denied,* 476 U.S.

1159 (1986). Further, "[a]ll questions of fact and any ambiguities in the controlling substantive law

must be resolved in the plaintiff's favor." *Lewis v. Fresne,* 252 F.3d 352, 357 (5th Cir. 2001).

Nevertheless, "where the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – "that the pleader

is entitled to relief.'" *Iqbal,* 556 U.S. at 678 (quoting Fed. Rule Civ. P. 8(a)(2)).

## I.     C&D Landfills

        Plaintiff's antitrust claims regarding "C&D landfills" focus on Defendants' alleged

conduct regarding the Chef Menteur landfill, particularly including former Mayor Nagin's eventual

withdrawal of the emergency authorization that temporarily had allowed it to accept enhanced C&D

(construction and debris) waste after Hurricane Katrina. For essentially the reasons stated by

Defendants in their memoranda (Rec. Docs. 79-1 and 94), the Court finds Plaintiff's antitrust claims

relative to C&D landfills barred by the *Noerr-Pennington* immunity doctrine.

        Although the Louisiana Supreme Court's opinion in *Astoria Entertainment, Inc., v.*

*DeBartolo,* 12 So. 3d 956, 967 (La. 5/22/09) utilized rather broad language in concluding that the

*Noerr-Pennington* doctrine did not immunize the defendants' alleged illegal conduct (bribery and

corruption)from civil liability, [2] the *Astoria* Court's *holding* is limited solely to non-antitrust

---

[2]      At the conclusion of the opinion, the *Astoria* Court stated:

> Whereas the right to petition granted by the First Amendment
> is not absolute, we find no reason to give the defendants' illegal
> actions First Amendment constitutional protection. In our view, while
> the [United States] Supreme Court has chosen to cast a wide net of
> protection afforded by *Noerr–Pennington*, this net should not be
> expanded to protect illegal activity, *especially in claims that arise*
> *outside of the scope of antitrust laws.*

claims. See *Astoria*, 12 So. 3d at 958, 959, n. 7, and 964-67; *Capital House Preservation Company, LLC v. Perryman Consultants, Inc.*, 47 So.3d 408, 421 (La. App. 1 Cir. 8/28/09)("Louisiana Supreme Court found . . . the case fell outside of the scope of the antitrust laws"), *writ denied*, 27 So.3d 856 (La. 2/23/10), *cert. denied*, 131 S. Ct. 104 (2010). Given that Louisiana courts treat federal courts analyses of the virtually identical provisions of the Sherman Act, 15 U.S.C. §1, et seq., as persuasive authority,[3] the Court is not convinced that the Louisiana Supreme Court, if addressing a Louisiana antitrust claim, would diverge from the approach previously taken by this Court, relative to bribery, in addressing federal antitrust claims.[4]   See

---

And, although the dicta from *Omni* may indicate the [United States Supreme] Court's reluctance to carve out additional exceptions to *Noerr–Pennington,* this language is far from a clear mandate that the defendants' corrupt actions must be afforded civil immunity under the doctrine. Considering the extent of criminality alleged to be involved in this case, we do not believe that the United States Supreme Court would be inclined to find that *Noerr–Pennington* provides civil immunity to the defendants. We find that the alleged bribery and corruption in this case are not petitioning activities that should be *constitutionally* protected. To hold otherwise would give *Noerr–Pennington* a sweeping effect far beyond the original purpose of the doctrine.

*Astoria,* 12 So.3d at 967 (emphasis added).

[3]    See, e.g. *Plaquemine Marine, Inc. v. Mercury Marine,* 859 So.2d 110, 117 (La. App. 1 Cir. 7/25/03) (citing *Louisiana Power & Light Co., v. United Gas Pipeline Co.*, 493 So. 2d 1149, 1154, 1158 (La. 1986)).

[4]    See *Boston Old Colony Ins. Co. v. Tiner Associates Inc.*, 288 F.3d 222, 227 (5th Cir. 2002) (citing *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 n. 3 (5th Cir. 2001)) ("We apply Louisiana state law as interpreted by the Louisiana Supreme Court; if that court has not definitively ruled on a particular issue, we must predict how it would decide the issue."); see also *Wiltz v. Bayer CropScience, Ltd. Partnership*, 645 F.3d 690, 695 (5th Cir. 2011) (In deciding issues under Louisiana law, federal courts look first to Louisiana's primary sources (the Louisiana Constitution, codes, and statutes), and then to final decisions of the Louisiana Supreme Court. Decisions of Louisiana's intermediate courts are not disregarded "unless we are convinced the Louisiana Supreme Court would decide otherwise [but] we are not strictly bound by them.").

*Bartholomew v. Bail Bonds Unlimited, Inc.*, No. 05-4165, 2007 WL 1063338,*1-4 (E.D. La. 4/5/07) (Duval, J.) (*Noerr-Pennington* immunity applied to Sherman Act claim despite alleged bribery of government actors by defendants);  *Astoria Entertainment, Inc., v. DeBartolo*, 159 F. Supp. 2d 303, 324-25 (E.D. La. 8/22/01) (Duval, J.) ("parties who. . . bribe the government for government action favorable to them cannot be prosecuted under the [federal] antitrust laws even when the intent of the parties is corrupt");  see also *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 367, 382-84 (1991) (although the plaintiff alleged that city council members "received advantages made possible by [the  defendant's] monopoly," Supreme Court rejected the existence of a conspiracy exception to *Noerr-Pennington* doctrine including one limited to those involving an element of unlawfulness (such as bribery)).

   Further, as Defendants argue, given the accomplishment of their alleged goal – former Mayor Nagin's withdrawal of the emergency enhanced C&D authorization for the Chef Menteur landfill – the "sham exception" to the *Noerr-Pennington* doctrine is inapplicable.  See, e.g. *Astoria,* 12 So.3d at 965 (where defendants "achieved favorable results [from Riverboat Gaming Commission] as a result of their actions. . . their endeavors were, by definition, not baseless"; thus, sham exception not applicable); see also *Professional Real Estate Investors, In c. v. Columbia Pictures Industries, Inc.*, 508  U.S. 49, 61 n. 5 (1993)("winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham").  Accordingly, Defendants' motion is granted relative to Plaintiff's antitrust claims regarding C&D landfills.

II.    **MSW Landfills**

      A. *Noerr-Pennington* Doctrine

      Plaintiff's antitrust claims regarding "MSW landfills" focus on Defendants' alleged conduct relative to municipal waste disposal in Jefferson Parish, particularly Defendants' purported efforts to obtain an exclusive waste disposal contract and to bring about the early termination of Plaintiff's landfill contract such that Defendant River Birch's contract would become effective.  See Amended Complaint (Rec. Doc. 10), ¶¶ 9-12, 52-73, and 79-80.  The applicability of the *Noerr-Pennington* doctrine to Defendants' conduct relative to MSW landfills, as opposed to C&D landfills, is not as straightforward.  Furthermore, although the parties' analyses of this issue are helpful, neither side's treatment is completely adequate.  On the present showing made, however, the Court likewise finds Plaintiff's Louisiana antitrust claims regarding "MSW landfills" barred by the *Noerr-Pennington* doctrine.  In so concluding, the Court reiterates its above prediction of Louisiana law regarding the alleged bribery of public officials.  The Court further agrees that the "sham exception" to the *Noerr-Pennington* doctrine has been circumscribed by the United States Supreme Court as argued by Defendants.

      Nevertheless, given the nature of Plaintiff's allegations regarding the RFP process, misrepresentations by parish officials (allegedly at Defendants' behest) to the Jefferson Parish Council regarding the River Birch contract proposal, and the institution of an allegedly frivolous lawsuit seeking early termination of Plaintiff's contract with the parish, the Court grants this aspect of Defendants' motion without prejudice to Plaintiff's right to amend its complaint.  Specifically, if Plaintiff determines, upon further review, that additional allegations would rescue some or all of its claims, relative to Defendants' conduct regarding MSW landfills, from the immunity granted by

the *Noerr-Pennington* doctrine, it may so amend its complaint in accordance with the instructions set forth below.

In any event, however, to the extent that any additional memoranda discussing the applicability of the *Noerr-Pennington* doctrine to Plaintiff's claims regarding MSW landfills are submitted, by any party, for the Court's consideration,  the  submissions are to address (unless clearly unnecessary) the existence and applicability of a possible fraud or misrepresentation exception to the *Noerr-Pennington* doctrine in certain "less political" contexts.  See, e.g., *Capital House Preservation Company, LLC v. Perryman Consultants, Inc.*, 47 So.3d 408, 419-20 (La. App. 1 Cir. 8/28/09)(discussing existence of possible exception to immunity for misrepresentations or fraud occurring outside political arena), *writ denied*,  27 So.3d 856 (La. 2/23/10), *cert. denied*, 131 S. Ct. 104  (2010);  see also *Professional Real Estate Investors, Inc.,* 508 U.S. at 61 n. 6 (noting the Court's  previous  statement  that "misrepresentations, condoned in the political arena, are not immunized when used in the adjudicatory process";  finding it unnecessary to decide "where and, if so, to what extent *Noerr* permits the imposition of antitrust liability for a litigant's fraud or other misrepresentation";  and citing *Walker Process Equipment, Inc. v. Food Machinery and Equipment Corp.*,  382  U.S.172,176-77  and  179-80  (Harlan, J., concurring)) (internal citations omitted); *Mercatus Group, LLC v. Lake Forest Hospital*, 641 F.3d 834,  842-49 (7th Cir. 2011) (discussing application of possible fraud exception);  *Woods Exploration & Producing Co., v. Aluminum Co. of America,* 438 F.2d 1286, 1294-98 (5th Cir. 1971), *cert. denied*, 404 U.S. 1047 (1972) (*Noerr-Pennington* doctrine inapplicable where state regulatory commission relied on false production forecasts filed by natural gas  producers);  *Jebaco, Inc. v. Harrah's Operating Co., Inc*., No. 06-4175,  2008 WL 638618, *9 (E. D. La. )(finding *Woods* distinguishable).

8

B.  Elements of Plaintiff's Claim

On the showing made, Defendants' motion also is granted relative to Plaintiff's allegations purportedly supporting the elements of its claims regarding MSW landfills.  This ruling likewise is without prejudice to Plaintiff's right to amend its complaint so as to clarify and/or supplement its allegations regarding the geographic market at issue and the "dangerous probability of success."  Any such amendment is to take into account the assertions set forth in Defendants' memoranda submitted in support of their motion to dismiss.

**CONCLUSION**

For the reasons stated, the Court finds that Plaintiff's amended complaint, as presented, fails to state legally viable claims under Louisiana antitrust law.  Because it is not apparent to the Court that amendment of the complaint would yield a viable claim regarding C&D landfills, the Court's dismissal of that aspect of Plaintiff's antitrust claims (Counts IV and VI) is with prejudice.  On the other hand, Defendants' motion is granted without prejudice to Plaintiff's right to amend the allegations of its amended complaint regarding MSW landfills (Counts V and VI). Accordingly, **IT IS ORDERED** that Defendant's motion to dismiss is **GRANTED WITH PREJUDICE** as to Plaintiff's claims regarding C&D landfills, but **GRANTED WITHOUT PREJUDICE** as to Plaintiff's claims regarding MSW landfills.

**IT IS FURTHER ORDERED** that, if Plaintiff desires to proceed further with its antitrust claims regarding MSW landfills, it must seek leave, no later than thirty (30) days from the entry of this Order and Reasons, to file a second amended and superseding complaint remedying the pleading deficiencies identified herein relative to those claims.  The second amended and superseding complaint must include all of the allegations from Plaintiff's original and first amended complaints (Rec. Docs. 1 and 10) on which it continues to rely, as well as its additional allegations,

such that the case can proceed on the basis of the second amended and superseding complaint without requiring further reference to the original or first amended complaint.  If Plaintiff cannot, or does not, cure these deficiencies by timely amendment, the Court shall, upon appropriate motion by Defendants, order its dismissal of these claims to be with prejudice.

**IT IS FINALLY ORDERED** that any additional memoranda directed to the applicability of the *Noerr-Pennington* doctrine to Plaintiff's antitrust claims regarding MSW landfills are to comply with the Court's instructions as stated herein.

New Orleans, Louisiana, this 31ˢᵗ day of March 2014.

_____
**KURT D. ENGELHARDT**
**United States District Judge**