UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WASTE MANAGEMENT OF LOUISIANA, LLC | CIVIL ACTION |
| VERSUS | NO. 11-2405 |
| RIVER BIRCH, INC.,<br>HIGHWAY 90, LLC,<br>FREDERICK R. HEEBE, and<br>ALBERT WARD, JR. | SECTION "N" (4) |

## ORDER AND REASONS

Presently before the Court is Defendant Frederick R. Heebe's motion (Rec. Doc. 109) seeking to disqualify Phelps Dunbar, LLP ("Phelps") from its representation in this matter of Plaintiff Waste Management of Louisiana, L.L.C. The Court rules on the motion as set forth herein.

## BACKGROUND

As stated in Heebe's memorandum, Plaintiff's RICO claims regarding the 2006 closure of the Chef Menteur landfill, as pled in Plaintiff's original and first amended complaints, are premised upon Defendants' alleged bribery of Henry Mouton, the former Commissioner of the Louisiana Department of Wildlife and Fisheries.[1] In granting Defendants' previously filed motion to dismiss regarding those claims, the Court concluded Plaintiff's allegations failed to satisfy its pleading burden relative to causation, that is, that the alleged RICO predicate offense, bribery of

---

[1] Plaintiff identified bribes paid to Henry Mouton as the predicate acts of his RICO claims concerning the Chef Menteur landfill in both his original and first amended complaint and RICO case statement. See Complaint (Rec. Doc. 1); Amended Complaint (Rec. Doc. 10), ¶ 91; RICO Case Statement (Rec. Doc. 5), pp. 8-11.

Mouton, a public official, was a "but for" and the "proximate cause" of the alleged injury–loss of the emergency authorization for the landfill.[2] In other words, the Court found that Plaintiff had not alleged sufficient facts to allow a reasonable inference, as opposed to mere speculation, that former Mayor Ray Nagin's July 2006 withdrawal of Chef Menteur's authorization was *because of* actions by Mouton, taken as a result of bribery allegedly attributable to Defendants, rather than a mere coincidence.[3]

Following that ruling, Plaintiff filed its Second Amended Complaint.[4] Although maintaining Plaintiff's prior assertions regarding Mouton, the Second Amended Complaint additionally alleges that Nagin's decision to withdraw Chef Menteur's emergency authorization resulted from Defendants' payment of unlawful contributions to Nagin's 2006 re-election campaign made with the specific intent to cause the former mayor to reverse course relative to the landfill.[5] Pointing to July 2006 correspondence from the Louisiana Department of Environmental Quality to Nagin outlining the negative consequences anticipated to result from Chef Menteur's closure,[6] Plaintiff contends Nagin's decision cannot otherwise be explained by a change in circumstance relative to the exigencies of New Orleans' hurricane clean-up operations.[7] In apparent further

---

[2] See Rec. Docs. 69 and 98.

[3] See Rec. Doc. 98.

[4] See Second Amended Complaint, Rec. Doc. 106.

[5] Id. at ¶¶ 6, 11-14, and 54-71.

[6] See Rec. Doc. 106, ¶¶ 16, and 64-69; see also Exhibit A to Rec. Doc. 106.

[7] Id. at ¶¶ 13 and 64.

support for its position,[8] Plaintiff's Second Amendment also twice references Nagin's 2014 conviction of "twenty counts of bribery, conspiracy, and wire fraud," arising from receipt of financial benefits from city contractors, including those associated with Hurricane Katrina clean-up and rebuilding efforts, both before and after Hurricane Katrina.[9]

Plaintiff's allegations regarding the intended and resulting consequences of Defendants' unlawful contribution to Nagin's campaign are the focus of the motion to disqualify now before the Court. Specifically, Heebe contends these new allegations have created an impermissible conflict of interest for Plaintiff's counsel, Phelps, "because Phelps represented Mr. Nagin for several years in connection with a federal criminal investigation and a state ethics probe."[10] Although Plaintiff maintains that no Phelps attorney served as counsel of record for Nagin's federal criminal proceeding,[11] it is undisputed that attorney Harry Rosenberg, a Phelps partner, served as legal counsel for Nagin in two state ethics proceedings concerning conduct that also provided the factual bases for certain of the aforementioned multiple counts of which Nagin was criminally convicted in 2014.[12] Phelps partner, Patrick A. Talley, Jr., along with co-counsel, James G. Kress, of Baker Botts, LLP, represent Plaintiff herein.

---

[8]   If not intended to provide support for Plaintiff's allegations regarding the purpose and effect of Defendants' contributions to Nagin's decision regarding the Chef Menteur landfill, the statements seemingly are superfluous and not appropriately included in the pleading.

[9]   See Rec. Doc. 106, ¶¶ 15 and 70.

[10]  See Rec. Doc. 109-1, p. 2.

[11]  See *United States v. Nagin*, Criminal Action No. 13-11 (E.D. La.).

[12]  See Ethics Matter Nos. 2009-442 and 2009-436 (Rec. Docs. 109-2 and 109-3); see also *United States v. Nagin*, Criminal Action No. 13-11 (Indictment, Rec. Doc. 1)(Judgment, Rec. Doc. 173)(E.D. La.).

The declaration by Talley accompanying Plaintiff's memorandum states that Talley and Kress were first retained relative to the instant lawsuit, in September 2011, when Talley was a partner at Frilot, LLC.[13] Prior to that time, however, Talley had represented Plaintiff in connection with the related lawsuit relative to Plaintiff's waste disposal contract (discussed in the Second Amended Complaint) that Jefferson Parish brought against Plaintiff in 2009.[14] In July 2012, Talley left Frilot and joined Phelps. Talley's declaration also advises that he was unaware of Rosenberg's representation of Nagin until defense counsel raised the issue in connection with the filing of Plaintiff's Second Amended complaint.[15] He further avers that he has never consulted with Rosenberg about Nagin or "shared any information with []Rosenberg regarding the allegations referring to Nagin" in this lawsuit.[16]

In opposing Heebe's motion, Plaintiff contends that Rosenberg's work for Nagin, regarding prior dealings with City of New Orleans contractors Home Depot and Mark St. Pierre, and his company NetMethods, is unrelated to Plaintiff's allegations herein against Defendants involving illegal campaign contributions. Plaintiff's submission also asserts that Rosenberg is the only Phelps Dunbar partner who has met with Nagin or performed any work on his behalf and that, in addition to Rosenberg, only his secretary and filing clerk have had access to the Nagin matter.[17] Plaintiff

---

[13] See Rec. Doc. 113-1, ¶ 3.

[14] See Rec. Doc. 113, p. 3 (referencing *Consolidated Garbage District No. 1 of the Parish of Jefferson and the Parish of Jefferson Through the Jefferson Parish Council v. Waste Management of Louisiana, L.L.C., et al.*, Civil Action No. 09-06270 (E.D. La).

[15] See Rec. Doc. 113-1, ¶5.

[16] Id. at ¶ 8.

[17] See Rec. Doc. 113, p. 2.

4

additionally represents that Rosenberg implemented security measures to restrict computer access to electronically generated and stored documents relating to Nagin's file.[18]

Plaintiff contends that replacing Talley at this stage would impose a substantial hardship on it given that Talley "has immersed in the issues relating to this case for five years."[19] Plaintiff also argues that any potential conflict can be adequately addressed by the Court "permitting Waste Management to allocate exclusive responsibility to its independent co-counsel, Baker Botts, for the discrete portion of the case relating to Mr. Nagin, including discovery and cross examination, and allowing Phelps Dunbar to withdraw as counsel from participation in those aspects."[20] Plaintiff's submission further represents that it "agrees to Phelps Dunbar's decision to restrict its representation in this matter so as to exclude any participation in potential discovery from or examination of Mr. Nagin."[21]

## LAW AND ANALYSIS

In connection with the instant motion, the parties discuss Rules 1.7, 1.9. and 1.10(a) of the Louisiana Rules of Professional Conduct.[22] Those rules provide, in pertinent part:

---

[18] Id.

[19] See Rec. Doc. 113, p. 3.

[20] Id. at p.16.

[21] Id. at p. 3; see also Rec. Doc. 113-3, ¶9.

[22] The Rules for Lawyer Disciplinary Enforcement of the Eastern District of Louisiana specifically adopt the Rules of Professional Conduct of the Supreme Court of Louisiana. See Local Rule 83.2.3 of the Local Rules for the United States District Court for the Eastern District of Louisiana.

## RULE 1.7 CONFLICT OF INTEREST: CURRENT CLIENTS

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing.

## RULE 1.9 DUTIES TO FORMER CLIENTS

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client

(1) whose interests are materially adverse to that person; and
(2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.

(c) A lawyer who has formerly represented a client in a matter or

> whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>
> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

**RULE 1.10(a) IMPUTATION OF CONFLICTS OF INTEREST: GENERAL RULE**

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

"It is generally proper for an opposing *party* to bring conflict of interest matters to the attention of the court." *Federal Deposit Insurance Corp. v. United States Fire Insurance Co.*, 50 F.3d 1304, 1315 (emphasis added)(citing *In re American Airlines*, 972 F.2d 605, 611 (5th Cir. 1992)). "'Such an objection should be viewed with caution, however, for it can be misused as a technique of harassment.'" *Id.* (quoting ABA Model Rule 1.7 cmt. (1992)). Furthermore, "[a]s a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former *client* moves for disqualification." *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976) (emphasis added). In any event, the party seeking disqualification bears the burden of proof. See *In re American Airlines*, 972 F.2d at 614; *United States v. DeCay,* 406 F. Supp. 2d 679, 683 (E.D. La. 2005).

In *Federal Deposit Insurance Corp.*, 50 F.3d at 1314, 1316, the Fifth Circuit offered the following guidance relative to a court's consideration of a motion seeking disqualification of counsel:

A court must take into account not only the various ethical precepts adopted by the profession but also the social interests at stake." Among the factors that we have considered in the past are "whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case." [*In re Dresser Industries, Inc.,* 972 F.2d 540, 544 (5th Cir. 1992)]. As we have noted in another action to disqualify counsel, "The rule of disqualification is not mechanically applied in this Circuit." *Church of Scientology of California v. McLean,* 615 F.2d 691, 693 (5th Cir.1980). All of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights.

\* \* \*

We have held that application of the disqualification rule requires a balancing of the likelihood of public suspicion against a party's right to counsel of choice. *Cossette v. Country Style Donuts, Inc.*, 647 F.2d 526, 530 (5th Cir. 1981). However, rather than indiscriminately gutting the right to counsel of one's choice, we have held that disqualification is unjustified without at least a reasonable possibility that some identifiable impropriety actually occurred. *Woods,* 537 F.2d at 813. A disqualification inquiry, particularly when instigated by an opponent, presents a palpable risk of unfairly denying a party the counsel of his choosing. Therefore, notwithstanding the fundamental importance of safeguarding popular confidence in the integrity of the legal system, attorney disqualification, particularly the disqualification of an entire firm, is a sanction that must not be imposed cavalierly.

In view of the particular facts of this case, we find that the FDIC's right to the counsel of its choice outweighs the harm of possible public suspicion. We do recognize that preservation of a popular faith in the judicial system is a primary consideration, and that lawyers generally should avoid even the appearance of impropriety. "It does not follow, however, that an attorney's conduct must be governed by standards which can be imputed only to the most cynical members of the public." [*Woods v. Covington Cty. Bank,* 537 F.2d 804, 813 (5th Cir. 1976)]. As noted in the comments to both the Model Rules and the Texas Rules, an opponent may be tempted to invoke the disqualification rule for purposes of harassment. Unhappily, as often as the rule is misused, the profession is disserved.

8

> When, for purely strategic purposes, opposing counsel raises the question of disqualification, and subsequently prevails, public confidence in the integrity of the legal system is proportionately diminished. "Indeed, the more frequently a litigant is delayed or otherwise disadvantaged by the unnecessary disqualification of his lawyer under the appearance of impropriety doctrine, the greater the likelihood of public suspicion of both the bar and the judiciary." *Woods*, 537 F.2d at 813.

Having considered the parties's submissions, in light of the foregoing legal authorities, the Court, on the showing made, presently declines to disqualify Phelps from all aspects of its representation of Plaintiff in this matter at this time. Thus, to that extent, **IT IS ORDERED** that Heebe's motion is **DENIED**. **IT IS FURTHER ORDERED**, however, that on or before Monday, April 13, 2015, Plaintiff, through counsel, shall submit the additional information outlined below for the Court's consideration. Following that submission, if Heebe concludes further motion practice regarding the issue of disqualification is warranted, he may proceed accordingly.

In reaching this determination, the Court notes, as urged by Plaintiff, the significant fact that neither movant Heebe, nor any of the other defendants to this proceeding, contend that any of them has ever been a Phelps client. Furthermore, Heebe has not identified any particular way in which his rights are prejudiced by Plaintiff's counsel's firm's relationship with Nagin. On the other hand, Plaintiff's allegations regarding Nagin and the Chef Menteur landfill accuse both Defendants *and* Nagin, not just Defendants, of serious wrongdoing. This is true notwithstanding that Nagin is not a defendant or specifically *named* co-conspirator.[23] Nor do Plaintiff's allegations regarding Nagin concern a minor issue in the case. To the contrary, as reflected in the other of the Court's rulings, proving causation regarding the reason for the withdrawal of the Chef Menteur's emergency authorization is an essential element of Plaintiff's RICO claims regarding that landfill. Further, it

---

[23] See Rec. Doc. 106, ¶¶ 23-33.

appears that Plaintiff intends to attempt to offer the fact (at a minimum) of Nagin's 2014 conviction as evidence to support its claims.[24]

It also is unclear, on the record presently before the Court, whether the ethics proceedings in which Rosenberg has served as counsel for Nagin have entirely terminated or whether some aspect of either remains ongoing. In other words, is Rosenberg presently representing Nagin relative to that or any other matter or is Nagin instead a former Phelps client? Plaintiff's submissions likewise do not indicate whether any Phelps attorney has informed Nagin of the allegations that Plaintiff has directed against him in the Second Amended Complaint and/or inquired whether he has any objection to Phelps' representation of Plaintiff in this matter, or instead consents to it and waives any such objection. Although the record in this matter does not reflect that Nagin has registered any objection, or filed a motion, relative to Phelps' representation and its allegations involving Nagin, it is not entirely inconceivable that he might choose to do so at some point in this proceeding, especially if discovery and testimony are sought from him.

Finally, it presently appears to the Court that one workable solution of this issue, not requiring Plaintiff to obtain new counsel, would be to have Phelps counsel's representation of Plaintiff, in this matter, limited to *only* the claims asserted concerning Jefferson Parish, with co-counsel, Baker Botts, hereinafter handling *all* aspects of this litigation relative to Plaintiff's claims involving the Chef Menteur landfill. While one part of Plaintiff's submission arguably suggests that Plaintiff has suggested this very division of labor amongst its counsel, others parts appear to suggest that Phelps would refrain *only* from discovery directed to Nagin personally and any examination at

---

[24] See note 8, supra.

10

trial.[25] To the extent that the latter arrangement is what actually is being proposed, it appears to the Court that the more prudent approach would be to have Phelps counsel removed from *any* aspect of this proceeding in which Plaintiff's interests would be adverse to Nagin's, including discovery (whether directed to Nagin or someone else), other pre-trial motion practice, and the presentation of evidence and argument at trial.  Given the relative recency of the addition of Plaintiff's allegations that unlawful campaign contributions to Nagin were at least partially responsible for his decision to withdraw the Chef Menteur emergency authorization, it is not apparent to the Court that such an arrangement would impose substantial hardship on Plaintiff.

In any event, as stated, the specifics of the separate roles of Plaintiff's counsel being proposed in response to Heebe's motion are not made sufficiently clear  in the submissions before the Court.  Nor, importantly, has the Court been provided with written evidence of Plaintiff's consent to any proposed severance of the roles and responsibilities of its counsel for the duration of this proceeding.

Accordingly, as indicated above, **IT IS ORDERED** that, on or before Monday, April 13, 2015,  Plaintiff's counsel shall submit the following:  (1) a report of current representation of Nagin by any member of the Phelps firm or, if all such representation has terminated, a statement confirming that status and that Nagin has been so informed of the termination of that representation; (2) a declaration from counsel (a) confirming that Phelps has provided Nagin with written notice of the substance of the allegations in the Second Amended Complaint concerning him, and the 2006 withdrawal of the Chef Menteur landfill emergency authorization, as well as a  copy of the pleading itself, and (b) stating the date of such notice;  (3) a copy of the written consent/waiver, or objection,

---

[25]     See Rec. Doc. 113, p. 16; Rec. Doc. 113, pp. 2-3 and 17-18; Rec. Doc. 113-1, ¶9.

if any, that Nagin provides or has provided to Plaintiff's counsel regarding Phelps' continued representation of Plaintiff in this proceeding; (4) a written proposal of the specific division of labor amongst Plaintiff's co-counsel that either already has been implemented and/or is proposed going forward; and (5) written consent by an authorized representative of Plaintiff (as well as any necessary written resolutions or other directives that Plaintiff's governing documents require from Plaintiff's managing members) regarding any limitation of the scope of Plaintiff's counsel's representation of Plaintiff in this matter, and/or permanent division of labor amongst Plaintiff's counsel, that would operate to prevent one or more attorneys from serving as legal counsel to Plaintiff with respect to any particular aspect(s) of this litigation.

New Orleans, Louisiana, this 27th day of March 2015.

                                                 _____
                                                        **KURT D. ENGELHARDT**
                                                        **United States District Judge**