UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WASTE MANAGEMENT OF LOUISIANA, LLC, | |
| Plaintiff | Case No. 11-2405 |
| v. | Judge Kurt D. Engelhardt |
| RIVER BIRCH, INC., HIGHWAY 90, LLC, FREDERICK R. HEEBE, and ALBERT J. WARD, JR. | Magistrate Judge Karen Wells Roby |
| Defendants. | |

**WASTE MANAGEMENT'S REPLY TO THE CONSOLIDATED OPPOSITION TO ITS MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS**

Plaintiff Waste Management of Louisiana, LLC ("Waste Management") respectfully submits this short reply in response to Defendants' and their Related Affiliates' Consolidated Oppositions to Waste Management's Motion to Compel the Production of Documents. Dkt. 179, *see also* Dkts. 180, 182–84 (adopting Response of Defendant Heebe).

**Argument**

Defendants' arguments for resisting discovery concerning the full scope of the RICO conspiracy alleged in Waste Management's Complaint, including their corrupt relationship with a state official, Mouton, and their actions taken to target other landfills, are based on a badly distorted view of the Court's Order that *denied* Defendants' Motion to Dismiss the Third Amended Complaint and *denied* their Motion to Strike allegations related to Mouton on grounds or relevance. *See* Order, Dkt. 156. Rather, Defendants' arguments are largely irrelevant because they are based almost entirely on the Court's earlier rulings that *did not address* the operative Third Amended Complaint. Moreover, Defendants' arguments for avoiding limited discovery of

their financial records (2005-2009) are misplaced.  The RICO scheme alleged is based on Defendants' use of shell companies and intermediaries for purposes of violating the law and disguising their own involvement.  Waste Management can scarcely be blamed because Defendants elected to operate their conspiracy and disguise their illegal bribes to Mouton through at least four (4) related shell companies, and to make illegal "straw man" campaign contributions through a multitude of affiliates.  Finally, Defendants' complaints about the over-breadth of Waste Management's document discovery is belied by the fact that Defendants have produced, in total, *just 4000 pages* of documents.

**I.     The Full Scope of Defendants' and Related Affiliates' Conduct Pursuant to the RICO Scheme Alleged Is Properly Discoverable.**

Defendants' arguments regarding Waste Management's discovery concerning the other landfills targeted as part of the RICO conspiracy alleged and the long-standing bribery of Henry Mouton, a state official and admitted co-conspirator, are based on two errors of law: (1) that Judge Engelhardt has "dismissed" Waste Management's allegations related Mouton, and (2) that the only potentially discoverable subject matter in a RICO claim are those directly related to the plaintiff's injury—to the exclusion of the conduct of the RICO enterprise and pattern of predicate acts even when those actions are taken pursuant to a single RICO conspiracy.  Both premises are wrong.

First, while Judge Engelhardt determined that an earlier version of Waste Management's Complaint should be dismissed for failure to allege *proximate causation* between the allegations surrounding the bribery of Mouton and his actions pursuant to the conspiracy "standing alone," that decision is of limited, if any relevance, to this discovery dispute.  *See* Order, Dkt. 131 at 4, 6 (Filed Mar. 27, 2015) ("Plaintiff has failed to cure the *causation pleading* deficiencies previously identified relative to Plaintiff's RICO claims premised up on Defendants' alleged bribery of

Mouton"). (emphasis added). Even as to that earlier version of the complaint, the Court's focus on the causation element between the RICO conduct then alleged did not constitute a ruling that the bribes paid to Mouton were not RICO predicate acts, nor that Mouton's admissions regarding the existence of a scheme to use Mouton's official position and as a funnel to other politicians to "shutter" competing landfills in the wake of Katrina were irrelevant to whether such a RICO conspiracy exited, as Defendants' Opposition suggests. *See* Opp. at 4, 5, 6.

More importantly, with respect to the operative Third Amended Complaint that is the basis for the discovery at issue, the Court expressly determined that Waste Management had alleged two RICO claims and that its allegations related to Mouton, including his acts targeting Old Gentilly and Two Rivers, were relevant to those RICO claims. ("While Defendants are correct that the Court previously found Plaintiff's allegations regarding Mouton, *standing alone*, insufficient to state a RICO claim, the Court is not presently convinced that those allegations are so lacking in possible relevance that they must be stricken from Plaintiff's pleadings."). Order, Dkt. 156 at 3 (emphasis added).

Finally, Defendants obfuscate the differences between injury causation and the RICO violation itself. To prevail, a RICO plaintiff must show: (a) a RICO violation; (b) causation; and (c) damages. These are separate elements. As explained in its opening brief, proof of a RICO violation requires proof that the accused RICO enterprise engaged in a pattern of conduct. Proof that Defendants paid multiple bribes to multiple recipients through multiple shell entities is relevant to showing such a pattern. Proof that Defendants took a series of actions using a state official on secret retainer to try to influence public officials to take actions detrimental to their competitors is relevant to showing such a pattern. That is true even if some of the victims targeted by that pattern of conduct are not the plaintiff. Thus, discovery that Defendants secretly

3

paid Mouton and others to agitate against competitors Old Gentilly and Two Rivers may be insufficient to show that Waste Management was injured by Defendants' unlawful conduct at Chef Menteur, but that discovery would still be highly relevant to establishing the existence of a RICO conspiracy to target rival landfills and a pattern of predicate acts taken to accomplish that objective.  Notably, Defendants incredible assertion that there was no such scheme to target rival landfills so as to benefit their own operations, *see* Opp. at 7, only amplifies Waste Management's need for the discovery to establish the substantive RICO violations alleged.

**II.     Financial Documents Are Relevant and Discoverable to Show the Operation of the RICO Enterprise.**

Defendants' argue that Waste Management's request for financial documents from the Corporate Defendants [1] and the Related Entities is unjustified because (1) their campaign contributions cannot be predicate acts; (2) the allegations do not encompass "complex webs of individuals funneling illegal bribes and sponsoring sham litigation"; and (3) requests for financial records over a five year period sweep too broadly.  Defendants manage to misstate the law, mischaracterize the facts and misapply RICO.

**A.     The Financing Underlying Defendants' Illegal Campaign Contributions is Discoverable.**

Defendants' argument that their campaign contributions, even when made through straw men designed to evade campaign finance laws and disguise their own financial involvement, are not discoverable because campaign contributions cannot from a RICO predicate act is wrong. Indeed, Defendants' argument that campaign contributions cannot be a bribe because federal law requires a quid pro quo has already been briefed to the Court correctly rejected.  *See* Order, Dkt. 131 at 4 ("The Court agrees with Plaintiff that its new assertions relative to Defendants' alleged

---

[1] To be clear, Waste Management has only requested account statements from the Corporate Defendants and Related Affiliates.  It has not requested that information from the Individual Defendants, Messrs. Heebe and Ward.

bribery of Nagin, if timely, are sufficiently pled[]."); Def. MTD S.A.C. at 6–8, Dkt. 107-1 (arguing for dismissal on the theory that campaign contributions to Nagin cannot be a bribe under federal law.)

### B. The Complex Web of Payments From Defendants Through Their Shell Companies are Discoverable.

Waste Management's allegations justify the limited discovery sought into the financial records of Defendants and Related Affiliates because those entities were co-conspirators directly involved in making illegal bribes and straw man contributions, or taking other actions targeting Waste Management and Defendants' landfill rivals. Several of these entities paid bribes to Mouton or funneled money through Mouton and others to make illegal payments to politicians in an effort to gain benefits and disguise Defendants' involvement. *See, e.g.*, T.A.C. ¶¶ 59, 60, 110, 115. That web of concealed payments to politicians, to Mouton, and to and from the various shell companies is discoverable because it shows the method by which Defendants' conspiracy operated, and that Defendants were directing this unlawful conduct. *See supra* 3–4.

### C. Waste Management's Requests to the Corporate Defendants and Related Entitles Are Not Overly Broad.

Waste Management's requests are appropriately tailored to the timeframes in which the key payments related to Chef Menteur and Jefferson Parrish Landfills likely occurred (2005-2009), and to the entities known to be or likely involved based the allegations of the Third Amended Complaint, publicly available campaign contribution data, a Louisiana Board of Ethics complaint against Defendants, and a federal indictment and plea of a co-conspirator, Mouton. This is hardly a "fishing expedition." Waste Management served discovery on fourteen entities precisely and only because Defendants chose to conduct their RICO enterprise using a dozen companies, including several that appear to exist only on paper, and to shuffle money among them so as to conceal Defendants' involvement and the true sources of the payments. Indeed,

5

Defendants' Opposition helps prove the "shell game." In response to discovery about the retention and payment of the Schonekas firm to appear in Court against Waste Management's efforts to keep the Chef Menteur landfill open, Defendants' responded only "ask Westside Construction." Westside Construction has been asked; and yet its only response was to incorporate Defendants' Opposition.

Finally, Waste Management would be willing to inspect Defendants' and Related Affiliates' financial records for the period in question, seeking copies of only transactions it believed relevant and subject to meeting and conferring over same. What Waste Management cannot accept is the need to identify each and every "transaction"—including internal shifting of funds through Defendants enterprise—without first having some discovery into those transactions. For the forgoing reasons, Waste Management requests that this Court grant Waste Management's Motion to Compel the Production of Documents.

/s/ James G. Kress
James G. Kress (pro hac vice)
Dan Starck (pro hac vice)
Baker Botts LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 639-7884
Fax: (202) 639-1159
james.kress@bakerbotts.com
daniel.starck@bakerbotts.com

Patrick A. Talley, Jr. (#1616)
Jeremy T. Grabill (#34924)
Phelps Dunbar LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130-6534
Tel: (504) 584-9220
Fax: (504) 568-9130
talleyp@phelps.com
jeremy.grabill@phelps.com

*Attorneys for Plaintiff Waste Management of Louisiana, LLC*

**CERTIFICATE OF SERVICE**

      I certify that on December 2, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF filing system, which will serve a copy of the forgoing and send a notice of electronic filing to all counsel of record, and via FedEx and e-mail to the following:

    Stephen London
    simone.londonlaw@hotmail.com
    2950 Energy Centre
    1100 Poydras Street
    New Orleans, LA 70163

                                          */s/ James Kress*