# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WASTE MANAGEMENT OF LOUISIANA, LLC | CIVIL ACTION |
| VERSUS | NO: 11-2405 |
| RIVER BIRCH, INC. ET AL | SECTION: "N" (4) |

## ORDER AND REASONS

Before the Court is **Joint Motion and Incorporated Memorandum for Writ of Habeas Corpus Ad Testificandum (R. Doc. 221)** filed by Plaintiff, Waste Management of Louisiana, LLC, and defendants River Birch, Inc., Highway 90 LLC, Frederick Heebe, and Albert J. Ward seeking a writ of habeas corpus *ad testificandum* be issued by the Court to bring Priosner C. Ray Nagin to the United States Courthouse for the Eastern District of Louisiana to sit for an oral deposition. For the following reasons, the motion is **GRANTED.**

## I.   Background

This action was filed in the District Court on September 23, 2011. R. Doc. 1. Waste Management of Louisiana, LLC ("Plaintiff") alleges that the Defendants have engaged in a long-running conspiracy to limit and exclude competition for landfill disposal services in and around New Orleans, Louisiana. R. Doc. 140, p. 1. The Defendants in this action are: River Birch, Inc., the owner and operator of River Birch landfill; Highway 90 LLC, who owns Highway 90 landfill; Frederick Heebe, the owner of Shadow Lake Management, Co., which is the parent corporation of River Birch, Inc.; and Albert Ward, who is the father-in-law of Heebe, and former President of River Birch, Inc. and Manager of Highway 90 LLC (collectively "Defendants"). In particular, the Plaintiff states that it suffered direct injury as a result of the Defendants actions in at least two instances: the premature closure of the Chef Menteur landfill in 2006 as part of a scheme to transfer more Hurricane Katrina clean-up debris to River Birch's landfill; and the efforts to prematurely

1

oust the Plaintiff as operator of the Jefferson Parish landfill as part of a scheme to transfer the Parish's municipal solid waste to River Birch landfill under an exclusive 25-year contract. *Id.* at p. 2. As such, the Plaintiff has alleged two counts of violations under Federal Racketeer Influenced and Corrupt Organizations ("RICO") Sections 1962(c) and Section 1962(d). *Id.* at p. 39-42.

### A. Chef Menteur Landfill Claims

For purposes of the subject motion, the Plaintiff's allegations against the Defendants in connection with the Chef Menteur landfill are particularly relevant. The Plaintiff alleges that following the devastation wrought by Hurricane Katrina in August of 2005, one of the first steps in the rebuilding process was the clearing and disposing of the massive amounts of waste and debris from vegetation and structures damaged by Katrina and the ensuing floods. R. Doc. 140, at p. 12. As part of that effort, in February 2006, then-Mayor Ray Nagin executed an Emergency Disaster Cleanup Site Request authorizing the Plaintiff to operate the Chef Menteur landfill. *Id.* The request suggested that the landfill would ultimately operate for twelve months, or the duration of the clean-up effort. *Id.* at p. 13. However, in July of 2006, Mayor Nagin announced that he would not renew his emergency authorization of the Chef Menteur landfill, which the Plaintiff alleges "effectively killed the Chef Menteur landfill" and resulted in the landfills closure in August of 2006. *Id.* at 23-24.

The Plaintiff further alleges that the closure of the Chef Menteur landfill resulted from the Defendants RICO violations. In particular, the Plaintiff alleges that at least two RICO predicate activities demonstrate that the Defendants were engaged in a pattern of racketeering activity that led to the Plaintiff's harm: 1) the bribery of Henry Mouton; and 2) the bribery of Ray Nagin. *Id.* at p. 13-21. First, the Plaintiffs allege that starting as early as 2003 the Defendants or others at their behest began bribing Mouton to use his position and influence to further the commercial

interests of the Defendants. *Id.* at p. 14. During 2005 and 2006, the Plaintiff further alleges that the Defendants bribed Mouton specifically for the purpose of using his position as a Louisiana Department of Wildlife and Fisheries Commissioner to oppose the approval, permitting, and/or operation of competing landfills to dispose of Katrina-related waste, including the Chef Menteur, Old Gentilly, and Two Rivers landfills. *Id.* Mouton allegedly used his influence to contact a number of public officials—including persons at the Environmental Protection Agency, the Federal Bureau of Investigation, the United States Attorney's Office, United States Senators, and others—to spread misinformation and seek their assistance in stopping other landfills from competing under the guise of environmental concerns. *Id.* at p. 15. Mouton also allegedly funneled $24,000 in bribes on behalf of the Defendants to other public officials during April and May of 2006. *Id.*

In May of 2011, Mouton plead guilty to multiple counts of bribery, conspiracy, and lying to federal agents; and, in the factual summary from that case, Mouton proffered that he conspired to shutter the competition with "Co-Conspirator A" and used the status and legitimacy of his office to successfully influence decision makers to stop the proposed Two Rivers landfill and to attempt to influence decision makers to shut down the Old Gentilly landfill. *Id.* at 14. The Plaintiff avers that "Co-Conspirator A" is Defendant Heebe. *Id.* at p. 3. However, the Court also notes that the Chef Menteur landfill was not listed nor discussed in the factual statement connected to that criminal case. R. Doc. 176-4. Moreover, the truthfulness of Mouton's statements in his plea agreement are hotly contested by the Defendants.

Second, the Plaintiff also alleges that the Defendants bribed Ray Nagin. In April and May of 2006, Mayor Nagin was engaged in a run-off election against then-Lieutenant Governor Mitch Landrieu. The Plaintiff alleges that shortly before the election the Defendants began providing

illicit financial support through multiple shell corporations to the cash-strapped Nagin campaign. *Id.* at p. 17. Plaintiff further avers that these contributions were made with the specific intent to advance the Defendant's commercial interests and influence Mayor Nagin in the performance of his duties. *Id.* For example, on May 11, 2006, Mayor Nagin temporarily closed the Chef Menteur site for additional testing; soon thereafter four shell corporations allegedly connected to the Defendants made $5,000 contributions to Mayor Nagin's campaign in alleged violation of Louisiana law. *Id.* at p. 17-18. As a result of these and other allegedly illegal contributions, the Plaintiff argues that Mayor Nagin reversed his stance on the Chef Menteur landfill and withdrew his emergency authorization of the site. *Id.* at p. 19. Similarly, in 2014, Mayor Nagin was convicted on twenty counts of bribery, conspiracy, and wire fraud. *Id.* at p. 20.

  **B.**  **Motion for Writ of Habeas Corpus** *Ad Testificandum*

At this time, both the Plaintiff and the Defendants have filed the instant motion seeking to have Nagin brought to the United States Courthouse for the Eastern District of Louisiana to sit for an oral deposition. R. Doc. 221. The Court had previously authorized the Parties to take Nagin's deposition pursuant to Federal Rule of Civil Procedure 30(a)(2)(B). R. Doc. 216. Following that authorization, the Parties consulted with the Bureau of Prison to find a mutually agreeable date for the deposition. R. Doc. 221, p. 1. Once a date was selected, the Parties served a Subpoena to Testify at a Deposition in a Civil Action to Nagin through his Counselor Matthew Allensworth and noticed the deposition for March 15, 2017 at 8:00 a.m. at the Federal Correctional Institution—Texarkana, 4001 Leopard Drive, Texarkana, Texas 75501. R. Doc. 221-2.

When counsel for the Parties arrived in Texarkana, Texas for the deposition, Allensworth informed counsel at 6:45 a.m. the morning of the deposition that the Warden of the Texarkana Federal Correctional Institution would not permit the attorneys or the court reporter to enter the

facility because Nagin did not consent to having his deposition taken. R. Doc. 221, p. 1-2. When the Parties and Court Reporter arrived at the facility at 8:00 a.m., the Warden again refused to allow them on the premises. R. Doc. 221-3, p. 2. As such, the Parties convened at the lobby of the Fairfield Inn in Texarkana, Texas to conduct a *proces verbal*. R. Doc. 221-4, p. 3. During the *process verbal*, it was indicated that Nagin made clear he would not participate despite the fact that he had been served a subpoena pursuant to this Court's order. *Id.* at p. 3-4.

Therefore, the Parties have filed the instant motion for Writ of Habeas Corpus *Ad Testificandum* to bring Nagin to the United States Courthouse for the Eastern District of Louisiana to sit for an oral deposition. R. Doc. 221. The Parties argue that Nagin possesses information material to these allegations, his testimony is essential in resolving the issues, and that his ten year sentence makes a continuance impractical. *Id.* at p. 3.

**II.     Standard of Review**

Through issuance of the Writ of *Habeas Corpus Ad Testificandum*, the Court "has the power to procure a prisoner's presence and testimony." *Latiolais v. Whitley*, 93 F.3d 205, 208 (5th Cir. 1996) (citing *Ballard v. Spradley*, 557 F.2d 476, 480 (5th Cir. 1977)); *Conwill v. Greenberg Taurig, L.L.P.*, No. 11–0938, 2012 WL 5288749, at *1 (E.D. La. Oct. 24, 2012). This authority is rooted 28 U.S.C. § 2241(c)(5) and Federal Rule of Civil Procedure 81(a)(4). *Conwill*, 2012 WL 5288749, at *1. Moreover, the Court has the authority to issue the writ extraterritorially. *ITEL Capital Corp. v. Dennis Min. Supply Equip., Inc.*, 651 F.2d 405, 406-07 (5th Cir. Unit B 1981). The Court may also a Writ of *Habeas Corups Ad Testificandum* for the purpose of taking an oral deposition. *Hasso v. Retail Credit Co.*, 326 F. Supp. 1179 (D. Del. 1971).

The decision to issue a writ of habeas corpus ad testificandum is within the "sound discretion of the district court." *Latiolais*, 93 F.3d 205 at 208. When considering the issuance of a Writ of *Habeas Corpus Ad Testificandum*, the Court must consider:

> (1) whether the prisoner's presence will substantially further the resolution of the case; (2) the security risks presented by the prisoner's presence; (3) the expense of the prisoner's transportation and safekeeping; and (4) whether the suit can be stayed until the prisoner is released without prejudice to the cause asserted.

*Conwill*, 2012 WL 5288749, at *1 (citing *Ballard*, 557 F.2d at 480). Additionally, when the prisoner at question has not filed the writ, "considerations such as whether the district court properly weighs the interest of the inmate in presenting his case in person, versus the interest of the state in maintaining the inmate's incarceration, do not necessarily come into play." *Id.*

### III. <u>Analysis</u>

The Plaintiff and the Defendants have filed the instant motion seeking to have Nagin brought to the United States Courthouse for the Eastern District of Louisiana to sit for an oral deposition. R. Doc. 221. As an initial matter, the Court notes that the Parties' request for a Writ of Habeas Corpus *Ad Testificandum* for the pre-trial oral deposition of a non-party prisoner witness in a civil action appears to be a relatively novel request, but not completely unheard of. *See Hasso v. Retail Credit Co.*, 326 F. Supp. 1179 (D. Del. 1971); *In Re Rothstein Rosenfeldt Adlter, P.A.*, No. 11-61338, 2011 WL 3903567 (S.D. Fla. Sept. 6, 2011) (discussing issuance of Writ of Habeas Corpus Ad Testificandum for pretrial deposition). While the issuance of this writ under these circumstances might be rare or exceptional, in consideration of the four factors outlined by the Fifth Circuit, the Court believes that the Writ of *Habeas Corpus Ad Testificandum* should be issued at this time.

For the first factor, Nagin's testimony would substantially further the resolution of the case given his role in the Plaintiff's claims and the Defendant's alleged RICO scheme. Certainly, the

Parties to this suit believe that his testimony is important to this action, and the allegations of the alleged bribery of Nagin by the Defendants underscore the importance of his testimony. While courts have looked to alternative means to secure the testimony such as depositions or video-depositions in place of the physical presence of the prisoner, *see, e.g., Conwill*, 2012 WL 5288749, at *1, the Court opines that alternatives to the physical presence of Nagin are inappropriate at this time. The Court has previously authorized the deposition (R. Doc. 216), and the Parties attempted to take the deposition after serving Nagin with a subpoena under Federal Rule of Civil Procedure 45 issued by this Court. R. Doc. 221-1, p. 1; R. Doc. 221-2. However, both Nagin and the Warden at the Texarkana Federal Correctional Institution refused to allow the deposition to go forward. R. Doc. 221-1, p. 1-2. Even further, the Parties were denied entrance on the premises to conduct the *proces verbal*. R. Doc. 221-3, p. 2. While the Court could require the Parties to attempt to enforce the subpoena in the District of compliance under Federal Rule of Civil Procedure 45(g), the undersigned is unconvinced those steps would achieve a different result given Nagin's refusal to obey the previously issued subpoena and the Warden's refusal to honor that subpoena as well. As such, the Court believes that requiring Nagin to physically appear in the Courthouse of the Eastern District of Louisiana would help effectuate that deposition. As such, factor weighs in favor of issuing the writ.

Turning to the second factor, the Parties argue that while the transportation of Nagin to the Eastern District of Louisiana might raise logistical issues these concerns are always present when considering a Writ of *Habeas Corpus Ad Testificandum*. R. Doc. 221, p. 3 (citing *Conwill*, 2012 WL 5288749, at *1 ("security and cost concerns are always at issue in the transfer of a prisoner")). Additionally, the Parties argue that they are unaware of any security concerns. *Id.* The Court agrees to this extent and does not contemplate any security risks.

Third, considering the cost expense of Nagin's transportation and safekeeping, the Court notes the Fifth Circuit has determined that "[o]nce the district court has determined that the prisoner's presence is essential, the possibility that a lack of transportation funds or personnel will develop is no justification for refusing to issue the writ." *Ballard*, 557 F.2d at 481; *see also Williams v. Beauregard Parish*, No. 08-355, 2014 WL 1030042 at *1-2 (W.D. La. Mar. 17, 2014). Certainly, as discussed above, Nagin's testimony is essential and that requiring his presence here is the most efficient way to secure that testimony. As such, that need outweighs any concerns about the expense of transportation and safekeeping.

Fourth, the Court also agrees that a continuance is impractical as Nagin is currently serving a ten-year sentence. As such the fourth factor weighs in favor of issuing the writ. Therefore, the Court grants the motion.

As a final note, the Court will order the Clerk of Court to issue the writ to Warden of the Texarkana Federal Correctional Institution as the custodian of Nagin. *See Pennsylvania Bureau of Corr. v. United States Marshals Serv.*, 474 U.S. 34, 39 (1985) (finding statutory authority for issuance of writ of *habeas corpus ad testificandum* "expressly commands the custodian to bring his prisoner to the court, but extends this duty to no other").

## IV. <u>Conclusion</u>

Accordingly,

**IT IS ORDERED** that the Plaintiff and Defendants' **Joint Motion and Incorporated Memorandum for Writ of Habeas Corpus Ad Testificandum (R. Doc. 221)** is **GRANTED.**

**IT IS FURTHER ORDERED** that the Clerk of Court is instructed to issue a Writ of Habeas Corpus *Ad Testificandum* to the Warden of Federal Correctional Institution Texarkana to produce the body of **C. RAY NAGIN** before this Court on the **11th day of May, 2017 at 10:00**

**a.m.** for an oral deposition in the above-entitled case with a certified court reporter in the undersigned United States Magistrate Judge's Courtroom located at **500 Poydras Street, Room B-431, New Orleans, Louisiana** and thereafter returned to the Federal Correctional Institution Texarkana to the Warden of said institution, or one of his authorized deputies when the deposition is completed.

New Orleans, Louisiana, this 13th day of April 2017.

**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**