# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| WASTE MANAGEMENT OF LOUISIANA, LLC | CIVIL ACTION |
|---|---|
| VERSUS | NO: 11-2405 |
| RIVER BIRCH, INC. ET AL | SECTION: "N" (4) |

## ORDER AND REASONS

Before the Court is a **Motion for Protective Order Regarding Discovery Requests (R. Doc. 236)** filed by Defendants River Birch, LLC, Highway 90, LLC, Frederick Heebe, and Albert J. Ward, Jr. seeking a protective order from the Court with respect to certain discovery requests that seek documents related to the Defendants' alleged efforts to divert waste streams from the Jefferson Parish landfill from 2004-2010. The motion is opposed. R. Doc. 244. The motion was submitted on May 10, 2017 and heard with argument on May 17, 2016. For the following reasons, the motion is **GRANTED.**

## I.  Background

This action was filed in the District Court on September 23, 2011. R. Doc. 1. Waste Management of Louisiana, LLC ("Plaintiff") alleges that the Defendants have engaged in a long-running conspiracy to limit and exclude competition for landfill disposal services in and around New Orleans, Louisiana. R. Doc. 140, p. 1. The Defendants in this action are: River Birch, Inc., the owner and operator of River Birch landfill; Highway 90 LLC, who owns Highway 90 landfill; Frederick Heebe, the owner of Shadow Lake Management, Co., which is the parent corporation of River Birch, Inc.; and Albert Ward, who is the father-in-law of Heebe, and former President of River Birch, Inc. and Manager of Highway 90 LLC (collectively "Defendants"). In particular, the Plaintiff states that it suffered direct injury as a result of the Defendants actions in at least two

instances: the premature closure of the Chef Menteur landfill in 2006 as part of a scheme to transfer more Hurricane Katrina clean-up debris to River Birch's landfill; and the efforts to prematurely oust the Plaintiff as operator of the Jefferson Parish landfill as part of a scheme to transfer the Parish's municipal solid waste to River Birch landfill under an exclusive 25-year contract. *Id.* at p. 2. As such, the Plaintiff has alleged two counts of violations under Federal Racketeer Influenced and Corrupt Organizations ("RICO") Sections 1962(c) and Section 1962(d). *Id.* at p. 39-42.

At this time, the Defendants have filed a Motion for Protective Order Regarding Discovery Requests Related to Unpled Allegations. R. Doc. 236. The Defendants seek a protective order in regards to discovery requests seeking information related to an alleged effort by the Defendants to divert sewage sludge, C&D waste, and Hurricane Katrina Waste (the "general diversion scheme") from the Jefferson Parish Landfill from 2004 through 2010. *Id.* In particular, the Defendants argue that these request should be denied because they are irrelevant to any claim actually pled by the Plaintiff. R. Doc. 236-1, p. 8-10. Rather, the Defendants argue that the Plaintiff is attempting to insert a new claim for damages at this stage of litigation in order to seek an additional $54.6 million in damages from the alleged waste-diversion scheme. *Id.* at p. 7-8.

In response, the Plaintiff argues that the Defendants are improperly using a motion for protective order to challenge the sufficiency of the Plaintiff's pleadings. R. Doc. 244, p. 2. Rather, the Plaintiffs argue that the complaint *does* encompass the general diversion scheme and points to a number of references in its complaint that it believes alludes to such a general diversion scheme. *Id.* at p. 4-5.

## II. <u>Standard of Review</u>

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. . ."

2

Rule 26(b)(1) specifies that "[i]nformation within the scope of discovery need not be admissible in evidence to be discovered." Rule 26(b)(1) also specifics that discovery must be "proportional to the needs of the case, considering the important of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Id.

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit.

Finally, Rule 26(c) governs the issuances of Protective Orders in discovery. A Court may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The rule offers a variety of potential options that the Court may use to protect the moving party, including forbidding or limiting the scope of discovery into certain matters or requiring that a trade secret or other confidential commercial information not be revealed or be revealed in only a certain way. Fed. R. Civ. P. 26(c)(1)(D), (G). "The party seeking the protective order bears the burden to show 'the necessity of its issuance, which contemplates a particular and specific demonstration of fact[.]'" *Cazaubon v. MR Precious Metals, LLC*, 14-2241, 2015 WL 4937888, at *2 (E.D. La. Aug. 17, 2015) (quoting *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir.1998)). The trial court enjoys wide discretion in setting the parameters of a protective order. *See Seattle Times Co. v. Rhinehart*, 467

U.S. 20, 36 (1984) ("To be sure, Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."). Finally, Rule 26(c)(1) requires a certification that the moving party has conferred or attempted to confer in good faith with the other affected party to attempt to resolve the issue without the court's interference.

### III.     Analysis

The Defendants have filed a Motion for Protective Order Regarding Discovery Requests Related to Unpled Allegations seeking a protective order in regards to discovery requests seeking information related to an alleged effort by the Defendants to divert three particular waste streams from the Jefferson Parish Landfill from 2004 through 2010: sewage sludge; Hurricane Katrina waste; and C&D or industrial waste. R. Doc. 236. In particular, the Defendants object to:

> **Request for Production No. 15**
> All documents in your possession prior to June 24, 2009 concerning the diversion of sewage sludge from the Jefferson Parish landfill to the River Birch landfill located at 2000 South Kenner Road in Jefferson Parish.
>
> **Request for Production No. 16**
> All documents in your possession prior to June 24, 2009 concerning the diversion of Hurricane Katrina waste from the Jefferson Parish landfill to the River Birch landfill located at 2000 South Kenner Road in Jefferson Parish.
>
> **Request for Production No. 17**
> All documents in your possession prior to June 24, 2009 concerning the diversion of C&D waste from the Jefferson Parish landfill to the River Birch landfill located at 2000 South Kenner Road in Jefferson Parish.
>
> **Request for Production No. 18**
> All documents in your possession prior to June 24, 2009 concerning the diversion of industrial waste from the Jefferson Parish landfill to the River Birch landfill located at 2000 South Kenner Road in Jefferson Parish.

R. Doc. 236-1, p. 7. The Defendants largely argue that the discovery request are not relevant to any claim in this case and are an attempt to insert a new claim for damages associated with the alleged general diversion scheme separate from the attempt to transfer the Parish's municipal solid waste to River Birch landfill under an exclusive 25-year contract.

Here, the Plaintiff argues that the information requested is clearly related to its assertions of efforts to divert waste streams from the Jefferson Parish landfill by the Defendants. R. Doc. 244, p. 3-6. In support of this argument, the Plaintiff points to generalized statements from the introduction of the complaint. R. Doc. 140, p. 2 (alleging scheme "to eliminate rival landfill operators and thereby divert additional waste streams and profits to the River Birch Defendants"); R. Doc. 140, p. 2 (alleging "scheme to transfer the Parish's municipal waste to a nearby River Birch landfill). During oral arguments, the Plaintiff identified a number of particular paragraphs from the complaint from which they argued the general diversion scheme could be inferred. In particular, the Plaintiff noted Paragraphs 1, 2, 3, 19, 22, 38, and 86 [1] The Plaintiffs argued that

---

[1] 1. This case arises out of the unlawful, corrupt, and anticompetitive pattern of conduct by Defendants River Birch, Inc., its owners, officers, and affiliated entities, (collectively, "the River Birch Defendants"), taken in concert with other alleged coconspirators, known and unknown, in an effort to dominate the landfill disposal business serving the greater New Orleans metro area.

2. The River Birch Defendants have participated in a long-running conspiracy to limit and exclude competition for landfill disposal services in and around New Orleans. Actions taken pursuant to this conspiracy include the systematic corruption of the political and administrative processes, including multiple instances of bribery and illegal payments to public officials, all as part of a concerted effort to eliminate rival landfill operators and thereby divert additional waste streams and profits to the River Birch Defendants.

3. Waste Management suffered direct injury to its business as a result of the River Birch Defendants' unlawful and tortious conduct in at least two instances. . .(2) the efforts to prematurely oust Waste Management as the operator of the Jefferson Parish landfill as part of a scheme to transfer the Parish's municipal solid waste to a nearby River Birch landfill under an exclusive 25-year contract.

….

19. Second, the more recent Jefferson Parish-River Birch landfill disposal contract represents another notable incident in the River Birch Defendants' pattern of anticompetitive conduct, including reliance on unlawful bribes and secret payments paid to influence public officials to unfairly favor River Birch over the interests of its competitors. In this instance, the River Birch Defendants corrupted a public bidding process and ultimately extracted a 25-year exclusive contract to dispose of municipal solid waste from Jefferson Parish at the River Birch landfill. The River Birch Defendants secured this windfall by, among other things, providing undisclosed financial benefits to members of the Jefferson Parish Administration and certain of the Administration's principal staff members involved in the manipulation, solicitation, evaluation, negotiation, and approval of that waste disposal contract. These payments were made as one part of a process to corrupt an administrative and adjudicative function of Jefferson Parish; a scheme that also included misrepresentations and violations of Parish Ordinances. Parish co-conspirators included Aaron Broussard, former president of Jefferson Parish, Tim Whitmer, Chief Administrative Officer, and Tom Wilkinson, Parish Attorney.

….

these paragraphs all make reference in some way to an effort to eliminate rival landfill operators and thereby divert additional waste streams and profits to the River Birch Defendants that should have given notice to the Defendants of the general diversion scheme being at issue here.

Federal Rule of Civil Procedure 26(b)(1) makes clear that any discovery must be relevant to a party's claim or defense. Moreover, "[t]he Committee Comments to [Rule 26] confirm that requiring relevance to a claim or defense 'signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.'" *Whitney v. Krystal Co.*, No. 10-773, 2012 WL 777161, at *1 (M.D. Ala. Mar. 7, 2012).

"To implement the rule that discovery must be relevant to the claim or defense of any party, district courts have examined the relationship of the requested discovery and the facts it is intended to uncover to the specific claims and defenses raised by the parties." *Thibault v. BellSouth Telecommunications, Inc.*, No. 07-200, 2008 WL 4808893, at *2 (E.D. La. Oct. 30, 2008) (M.J.

---

22. This lawsuit seeks compensation for the financial losses suffered by Waste Management as a direct, proximate, and intended result of the River Birch Defendants' campaign of unlawful and unethical conduct targeted at eliminating competition for the River Birch landfills.

….

38. The River Birch Defendants' actions outlined in this Third Amended Complaint were targeted at Waste Management and other landfill competitors of River Birch, Inc. and Highway 90 LLC located in proximity to compete with the River Birch Defendants' landfills. As outlined below, these actions had the direct and proximate effect of injuring the finances, business, and property of Waste Management.

….

86. Unknown to Waste Management, the River Birch Defendants and certain co-conspirators affiliated with Jefferson Parish schemed to prematurely terminate the Landfill Contract with Waste Management prior to its natural term or to otherwise oust Waste Management from operation of the Parish Landfill in order to benefit River Birch.

R. Doc. 140.

Wilkinson); *see also Thibodeaux v. Normand*, No. 13-5903, 2016 WL 7033674, at *3 (E.D. La. Dec. 1, 2016).

Reading the above noted particular paragraphs by themselves armed with the knowledge that the Plaintiff is attempting to assert the claims associated with the sludge, industrial and Hurricane Katrina Waste, the Court agrees that those paragraphs might imply the general diversion scheme claim of which the Plaintiff now seeks discovery. *However*, when the complaint is read as a whole and those particular paragraphs are read in context, any reference to a diversion of waste streams from the Jefferson Parish Landfill appear to be in connection to the Plaintiff's claim that the Defendants had a scheme to transfer the Parish's municipal solid waste to a nearby River Birch landfill under an exclusive 25-year contract.

Moreover, this reading is bolstered by the Plaintiff's own initial disclosures. In its initial disclosures, the Plaintiff only reports "damages related to Defendants' conduct in connection with the premature termination of contract to operate the Jefferson Parish Landfill and the resulting legal fees and costs to ameliorate that harm." R. Doc. 250-1, p. 4. While the Plaintiff's attorney suggested that the initial disclosures might not have accurately reflected the damages at issue in this case, the Court believes that they do reflect how the Plaintiff perceived the case at the time of filing. And, of note, the initial disclosures make no reference to the sludge, industrial or Hurricane Katrina waste or damages from the general diversion scheme.

What's more, from at least May of 2013 until the first quarter of 2017, it appears from the record as well as the Parties' documents that this litigation has focused on the alleged scheme to grant River Birch an exclusive 25 year contract in Jefferson Parish. Only as of the past few months has the Plaintiff attempted to expand its claims to encompass the general diversion scheme as a

result of a new understanding of the potential damages from the diverted sewage, industrial, and Hurricane Katrina waste gathered from standalone documents from the DEQ and the Plaintiff.

Overall, the Court finds that the more general diversion scheme claim cannot be reasonably inferred from the complaint nor has anything occurred until recently to have given Defendants notice of that claim. Had the Plaintiff wanted or intended to include the claims associated with the sewage, industrial, and Hurricane Katrina waste, the Plaintiff could have easily included such allegations in its over forty page complaint. Furthermore, the Plaintiff has already demonstrated an ability to plead the factual allegations and claims associated with this very general diversion scheme in a prior litigation. R. Doc. 236-5.

While the Plaintiff is correct that Rule 8 requires "a short concise statement of the claim; detailed factual allegations are not required" (R. Doc. 254-2, p. 2), the "Court does not consider [the claims] in the abstract but rather with respect to the specific claim being asserted." *Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.,* No. 02-3398, 2006 WL 378523, at *4 (E.D. La. Feb.17, 2006). The Plaintiff points to this Court's opinion in *Dubuque Barge & Fleeting Service, Inc. v. Plaquemines Parish Government* for the proposition that "Rule 8 does not require the kind of specific fact pleading defendants seek [and the] court's discovery devices are available to defendants to obtain the more detailed information they seek." No. 10-516, 2010 WL 1710372, at *2 (E.D. La. Apr. 23, 2010) (citing *Simoneaux v. Jolen Operating Co.,* No. 04–2467, 2004 WL 2988506, at *1 (E.D.La. Dec.15, 2004)). However, as that decision goes on state, the defendant must be given "fair notice of the claim and the grounds upon which it rests." *Id.* Here, the only claims alleged in regards to Jefferson Parish in the complaint as well as the record demonstrated to this point appears to be Defendant's alleged efforts to prematurely oust the Plaintiff as operator of the Jefferson Parish landfill as part of a scheme to transfer the Parish's municipal solid waste to

River Birch landfill under an exclusive 25-year contract. There are no specific factual allegations or indications of a broader diversion of waste claim found previously so as to put the Defendants on notice of that claim or make information related to that claim relevant. *See Volvo Trucks N. Am., Inc.*, 2006 WL 378523, at *4 ("the Court has before it a very specific claim and the contours of any defenses raised in this case will necessarily be governed by the contours of that claim.").

Therefore, because the general diversion scheme is not a claim at issue in this litigation, the discovery requests related to that scheme are not relevant to this case. *See* Fed. R. Civ. P. 26(b)(1). Therefore, the Court grants the motion for protective order.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Defendants' **Motion for Protective Order Regarding Discovery Requests (R. Doc. 236)** is **GRANTED.**

**IT IS FURTHER ORDERED** that the Defendants' do not need to respond to Requests for Production Nos. 15-18.

New Orleans, Louisiana, this 23rd day of May 2017.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**