UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WASTE MANAGEMENT OF LOUISIANA, LLC, | ) ) ) ) |
| Plaintiff | ) ) Case No. 11-2405 |
| v. | ) ) Judge Kurt D. Engelhardt |
| RIVER BIRCH, INC., HIGHWAY 90, LLC, FREDERICK R. HEEBE, and ALBERT J. WARD, JR. | ) ) Magistrate Judge Karen Wells ) Roby ) ) |
| Defendants. | ) |

**WASTE MANAGEMENT'S SUPPLEMENTAL MEMORANDUM
IN OPPOSITION TO DEFENDANTS' MOTION TO QUASH SUBPOENA
OF PETER J. BUTLER OR FOR A PROTECTIVE ORDER**

In accordance with the Court's request for supplemental briefing during the July 19, 2017 hearing on Defendants' Motion to Quash Subpoena of Peter J. Butler or for a Protective Order (Rec. Doc. 283), Plaintiff Waste Management of Louisiana, LLC ("Waste Management") respectfully submits this Supplemental Opposition brief.

During the July 19 hearing, and in its subsequent Order (Rec. Doc. 309), the Court denied Defendants' motion to quash as to Topics 1, 3, 4, and 5 of the Butler subpoena. However, the Court requested supplemental briefing regarding Topic 2, namely "All communications between You and the named Defendants, or any person or entity associated with or acting on behalf of the named Defendants, concerning Henry Mouton and any lobbying or related activities regarding the Chef Menteur, Old Gentilly, or Two Rivers landfills from August 29, 2005 to November 31, 2008." *See* Attachment A to Butler Subpoena (Rec. Doc. 283-2, p. 9). In particular, the Court invited further briefing regarding "the application of the crime-fraud exception to the attorney-

1

client privilege" and noted that "Mouton's recently completed deposition may aid the Court's consideration." Rec. Doc. 309, p. 4.

Defendants contend that the crime-fraud exception should not apply to Topic 2 by calling Mr. Mouton's guilty plea into question. Defendants argue that Mr. Mouton may have pled guilty under duress and, therefore, the Court should not accept the guilty plea and conviction as evidence of criminal conduct. However, these desperate arguments are contrary to established law and should be rejected.

First, Mr. Mouton was recently deposed on July 11 in this case and confirmed under oath that his guilty plea, which was accepted by U.S. District Judge Martin L.C. Feldman *after the alleged prosecutorial misconduct had been exposed*, was truthful and accurate:

> Q. Mr. Mouton, . . . The defendants were asking you a number of questions about the factual statement in support of plea. Do you recall that?
>
> A. Yes.
>
> Q. You've had a chance to review that factual statement in support of your plea again today, correct?
>
> A. Correct.
>
> Q. Is there anything in there that you think is inaccurate?
>
> A. No, I do not.[1]
>
> * * * * * * *
>
> Q. I'm going to show you, sir, what has been marked as Exhibit 537 to your deposition. This is the order and reasons authored by Judge Martin Feldman on June 5, 2013.
>
> A. Okay.
>
> . . . .

---

[1] Exhibit A – Transcript of Mouton Deposition, p. 440:15 – 441:2.

Q. And so, for example, the top of Page 5 when Mr. Schonekas and Mr. Kutcher were asking you [during today's deposition] about threats and perceived threats against your wife for prosecution, the Court asked you:

> Have you ever – have you been influenced, induced, persuaded in any manner to plead guilty because of any threats made by anyone?
>
> The Defendant: No, Your Honor.

Do you see that?

A. Yes.

Q. Is that true and correct?

A. That's true and correct.[2]

\* \* \* \* \* \* \*

Q. Okay. And then if we go down to the third one on Page 5 where there's the little ellipses there, it says:

> The Court: Before we move on, let me ask you, is there anything about the government's factual basis that is untrue or mistaken?
>
> The Defendant: No, it's correct.

Do you see that?

A. Yes.

Q. Was that testimony true at the time it was given?

A. It was.

Q. Is that true today?

A. Yes.[3]

\* \* \* \* \* \* \*

---

[2] Ex. A, p. 442:7 – 443:23. The referenced Exhibit 537, Judge Feldman's June 5, 2013 Order and Reasons, is attached hereto as Exhibit B.

[3] Ex. A, p. 444:25 – 445:13.

Q. Okay. Now, you've mentioned earlier that you did go to a sentencing hearing, also before Judge Feldman; is that correct?

A. Yeah, he sentenced me on September 11th.

. . .

Q. Okay. Sir, let me show you what's been marked as Exhibit 538 to your deposition, please.

A. Okay. This is sentencing. Okay, this is sentencing.

Q. And I want to specifically direct your attention to Page 21 of that transcript.

A. Okay.

Q. And in particular, you'll see that Judge Feldman asked you:

> Mr. Mouton, do you have anything to say in mitigation of sentence before your sentence is imposed?

   Do you see that?

A. I do.

Q. Okay. And then you speak; is that right?

A. What's that.

Q. And then you answer that question, correct?

A. Yeah, I answered the question.

Q. Can you just read that first paragraph into the record.

A. Yes, Your Honor. I apologize for what I did. *I knew what I did when I – I knew when I did it, I was committing a crime. I knew it then. I know it today.* I hurt my two children very badly. I hurt my friends, and I hurt my family. And I put a lot of people in a lot of pain and misery. I made a big mistake. There's no two ways about it. It was very painful for me to be here today, but I'm here to stand up and take my sentence to show my children that I am the man I'm supposed to be for them. I am sorry for Your Honor, I am sorry for this court, and that's all I have to say.

Q. Okay. Was that statement true and correct when you made it before Judge Feldman?

4

A. It was.

Q. Okay. You knew at the time of what you were doing, you were committing a crime; is that right?

A. Correct.[4]

\* \* \* \* \* \* \*

Make no mistake, without any factual basis whatsoever, Defendants are challenging Mr. Mouton's sworn deposition testimony and open court statements to Judge Feldman, including those made after the overarching criminal investigation of Defendants had closed with their own supposition as to Mr. Mouton's motives, and are essentially implying that Judge Feldman was wrong to accept Mr. Mouton's guilty plea. Defendants' bald suggestion that the plea is unreliable is contrary to the lengthy record *in this case* in which Mr. Mouton confirmed during his deposition the accuracy of his plea, as recited above. Moreover, courts routinely rely on guilty pleas in finding that the crime-fraud exception applies. In *United States v. Ruhbayan*, 201 F. Supp. 2d 682, 686 (E.D. Va. 2002), the government made out its prima facie case by relying upon a third-party's "guilty plea to a criminal information," "statement of facts in support of her plea," and evidence that defendant solicited the third-party's false testimony. *See also United States v. Lonich*, No. 14-CR-00139, 2016 WL 1733633, at *9 (N.D. Cal. May 2, 2016) (relying solely on a guilty plea, indictment, and search warrant affidavit in finding that government met its prima facie burden for *in camera* review of documents).[5]

---

[4] Ex. A., p. 445:14 – 447:20 (emphasis added). The referenced Exhibit 538, the transcript of the sentencing hearing before Judge Feldman, is attached hereto as Exhibit C.

[5] As this Court has previously found, the burden of establishing a prima facie case of the crime-fraud exception in the civil context is not great and "**is certainly less than the standard** that a district attorney or other prosecutor would use in **pursuing criminal charges**." *In re Katrina Canal Breaches Consol. Litig.*, No. 05-4182, 2008 WL 4401970, at *10 (E.D. La. Sept. 22, 2005) (emphasis added).

Defendants' contention that the crime-fraud exception turns solely on Mr. Mouton's plea misstates the law and the relevance of the plea by assuming that a criminal plea is the necessary precondition for that exception. The crime-fraud exception is not so narrow as to require a criminal conviction before it can be applied. *See, e.g.*, *In re Grand Jury Subpoena*, 220 F.3d 406, 410 (5th Cir. 2000) (finding that although targets of an investigation "may have valid defenses that preclude indictment or conviction for fraud," that does not defeat the existence of a crime-fraud prima facie case); *In re Katrina Canal Breaches*, 2008 WL 4401970, at *11 (holding that a defendant's denial of possessing a criminal intent, while certainly a defense, did not defeat the establishment of a prima facie case of crime fraud). For purposes of the crime-fraud exception, it is not necessary for plaintiff to (1) prove the essential elements of the crime or fraud beyond a reasonable doubt or (2) show that criminal charges have been filed against defendants. *Id.* at *10. Nevertheless, Waste Management has proffered <u>more</u> than what is required here. Mr. Mouton's plea is buttressed by a lengthy paper trail showing Mr. Butler's intimate involvement in that same conspiracy—that Mr. Butler's advice and conduct was used in furtherance of that criminal conspiracy.

<u>Second,</u> Defendants' argument that the Supreme Court's recent decision in *McDonnell v. United States* undermines Mr. Mouton's guilty plea similarly misses the mark. *McDonnell* did not, as Defendants seem to contend, announce a new rule of constitutional interpretation of all bribery statutes. Far from it. It rested on a narrow interpretation of the statutory language of the term "official acts" in two laws, the Hobbes Act and the Honest Services Fraud statute, neither of which were the basis for Mr. Mouton's plea in the first place. In fact, the law that was the basis of Mr. Mouton's plea, 18 U.S.C. § 666(a)(1)(B), concerning theft or bribery concerning programs that receive Federal funds, never mentions the term "official act," as dissected in

*McDonnell*. Thus, *McDonnell* offers no justification for questioning Mr. Mouton's criminal conviction.

Moreover, even if *McDonnell* applied to the *statute* under which Mouton was sentenced, it does not apply retroactively to prior convictions. Retroactive applicability of Supreme Court decisions is a necessary condition for holding that later developments in the law undermine a defendant's guilty plea. *See, e.g.*, *Reyes-Requena v. United States*, 243 F.3d 893, 904 (5th Cir. 2001) (holding that a defendant, arguing a substantive change in the law as a basis for their federal post-conviction relief, must show, in part, a retroactively applicable Supreme Court decision establishing that defendant "may have been convicted of a nonexistent offense"); *Ortega v. Mosley*, 618 F. App'x 221, 222 (5th Cir. 2015) (same). Indeed, the Fifth Circuit has already declined to find that *McDonnell* "set forth new rules of constitutional law that have been made retroactive to cases on collateral review." *See In re Lott*, 838 F.3d 522, 523 (5th Cir. 2016). In short, *McDonnell* has no bearing on Mr. Mouton's plea or the applicability of the crime-fraud exception.

<u>Finally</u>, during the July 19 hearing, Defendants reiterated their reliance on *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1330 (8th Cir. 1986). As Waste Management explained in its original opposition brief, *Shelton* does not circumvent the crime-fraud exception. Rather, *Shelton* concerns the appropriate circumstances for deposing in-house counsel. But Defendants themselves admit that Mr. Butler was *not* their in-house counsel, and cite to no authority to support their assertion that merely because he was their "primary" attorney for many years he should be treated as in-house counsel under *Shelton*. And unlike the attorney in *Shelton*, whose only involvement in the case was representing the client against the lawsuit, Mr. Butler was a participant, not an advocate or trial counsel, in the underlying actions that make up Waste

Management's claims. Indeed, Defendants ignore the exceptions to *Shelton*, such as when an attorney's role in a litigation is that of a "business advisor" rather than trial counsel, *Shelton* does not apply in the first place. *See Premier Dealer Servs., Inc. v. Duhon*, No. 12-1498, 2013 WL 5720354, at *4 (E.D. La. Oct. 21, 2013) (holding that *Shelton* did not apply because the attorney was not enrolled in the matter, did not sign or file pleadings, and was able to provide testimony on advice given to plaintiff and negotiations that occurred prior to litigation). Mr. Butler's role as a ghost writer for a third-party, Henry Mouton, in a criminal conspiracy, does not qualify for protection under *Shelton*.

In summary, Topic 2 of Waste Management's subpoena to Mr. Butler seeks documents and testimony pertaining to advice Mr. Butler provided to Defendants in furtherance of a criminal conspiracy to which one of Defendants' co-conspirators, Mr. Mouton, has already been convicted. Such advice is discoverable under the crime-fraud exception and Waste Management respectfully requests that Defendants' motion to quash be denied in its entirety.

Dated July 21, 2017　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　/s/ *Patrick A. Talley, Jr.*
　　　　　　　　　　　　　　　　　　　　　　James G. Kress (pro hac vice)
　　　　　　　　　　　　　　　　　　　　　　Dan Starck (pro hac vice)
　　　　　　　　　　　　　　　　　　　　　　Regan A. Gibson (pro hac vice)
　　　　　　　　　　　　　　　　　　　　　　Baker Botts LLP
　　　　　　　　　　　　　　　　　　　　　　1299 Pennsylvania Avenue, NW
　　　　　　　　　　　　　　　　　　　　　　Washington, DC 20004
　　　　　　　　　　　　　　　　　　　　　　Tel: (202) 639-7884
　　　　　　　　　　　　　　　　　　　　　　Fax: (202) 639-1159
　　　　　　　　　　　　　　　　　　　　　　james.kress@bakerbotts.com
　　　　　　　　　　　　　　　　　　　　　　daniel.starck@bakerbotts.com
　　　　　　　　　　　　　　　　　　　　　　regan.gibson@bakerbotts.com

>Patrick A. Talley, Jr. (#1616)
>Jeremy T. Grabill (#34924)
>Phelps Dunbar LLP
>365 Canal Street, Suite 2000
>New Orleans, LA 70130-6534
>Tel: (504) 584-9220
>Fax: (504) 568-9130
>talleyp@phelps.com
>jeremy.grabill@phelps.com
>
>*Attorneys for Plaintiff*
>*Waste Management of Louisiana, LLC*

## CERTIFICATE OF SERVICE

I certify that on July 21, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF filing system, which will serve a copy of the forgoing and send a notice of electronic filing to all counsel of record.

>/s/ *Patrick A. Talley, Jr.*