# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WASTE MANAGEMENT OF LOUISIANA, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO: 11-2405** |
| **RIVER BIRCH, INC. ET AL** | **SECTION: "N" (4)** |

## ORDER

Before the Court is a **Motion to Quash Subpoena to Attorney Peter J. Butler, Sr. or Alternatively for a Protective Order (R. Doc. 283)** filed by Defendants River Birch LLC, Highway 90, LLC, Frederick Heebe, and Albert Ward, Jr. seeking an order quashing the subpoena issued by the Plaintiff to Peter Butler, Sr. The motion is opposed. R. Doc. 296. The motion was submitted on July 19, 2017 and heard with argument that same day.

Following oral argument, the Court found that Topic No. 2, which seeks information related to "[a]ll communications between [Butler] and named Defendants, or any person or entity associated with or acting on behalf of the named Defendants," may involve discussion of privilege information. While the Court heard argument concerning the application of the crime-fraud exception to the attorney-client privilege, the Court determined that it required additional briefing on this matter, particularly given that Mouton's recently completed deposition may aid the Court's consideration. Both the Plaintiff and the Defendant have filed additional memorandums. R. Doc. 311; R. Doc. 314.

### I. Background

This action was filed in the District Court on September 23, 2011. R. Doc. 1. Waste Management of Louisiana, LLC ("Plaintiff") alleges that the Defendants have engaged in a long-running conspiracy to limit and exclude competition for landfill disposal services in and around

New Orleans, Louisiana. R. Doc. 140, p. 1. The Defendants in this action are: River Birch, Inc., the owner and operator of River Birch landfill; Highway 90 LLC, who owns Highway 90 landfill; Frederick Heebe, the owner of Shadow Lake Management, Co., which is the parent corporation of River Birch, Inc.; and Albert Ward, who is the father-in-law of Heebe, and former President of River Birch, Inc. and Manager of Highway 90 LLC (collectively "Defendants"). In particular, the Plaintiff states that it suffered direct injury as a result of the Defendants actions in at least two instances: the premature closure of the Chef Menteur landfill in 2006 as part of a scheme to transfer more Hurricane Katrina clean-up debris to River Birch's landfill; and the efforts to prematurely oust the Plaintiff as operator of the Jefferson Parish landfill as part of a scheme to transfer the Parish's municipal solid waste to River Birch landfill under an exclusive 25-year contract. *Id.* at p. 2. As such, the Plaintiff has alleged two counts of violations under Federal Racketeer Influenced and Corrupt Organizations ("RICO") Sections 1962(c) and Section 1962(d). *Id.* at p. 39-42.

The Plaintiff further alleges that the closure of the Chef Menteur landfill resulted from the Defendants' RICO violations. In particular, the Plaintiff alleges that at least two RICO predicate activities demonstrate that the Defendants were engaged in a pattern of racketeering activity that led to the Plaintiff's harm: 1) the bribery of Henry Mouton; and 2) the bribery of Ray Nagin. *Id.* at p. 13-21. First, the Plaintiffs allege that starting as early as 2003 the Defendants or others at their behest began bribing Mouton to use his position and influence to further the commercial interests of the Defendants. *Id.* at p. 14. During 2005 and 2006, the Plaintiff further alleges that the Defendants bribed Mouton specifically for the purpose of using his position as a Louisiana Department of Wildlife and Fisheries Commissioner to oppose the approval, permitting, and/or operation of competing landfills to dispose of Katrina-related waste, including the Chef Menteur, Old Gentilly, and Two Rivers landfills. *Id.* Mouton allegedly used his influence to contact a

number of public officials—including persons at the Environmental Protection Agency, the Federal Bureau of Investigation, the United States Attorney's Office, United States Senators, and others—to spread misinformation and seek their assistance in stopping other landfills from competing under the guise of environmental concerns. *Id.* at p. 15. Mouton also allegedly funneled $24,000 in bribes on behalf of the Defendants to other public officials during April and May of 2006. *Id.*

In May of 2011, Mouton plead guilty to one count of conspiracy to receive illegal payoffs; and, in the factual summary from that case, Mouton proffered that he conspired to shutter the competition with "Co-Conspirator A" and used the status and legitimacy of his office to successfully influence decision makers to stop the proposed Two Rivers landfill and to attempt to influence decision makers to shut down the Old Gentilly landfill. *Id.* at 14. The Plaintiff avers that "Co-Conspirator A" is Defendant Heebe. *Id.* at p. 3. However, the Court also notes that the Chef Menteur landfill was not listed nor discussed in the factual statement connected to that criminal case. R. Doc. 176-4. Moreover, the truthfulness of Mouton's statements in his plea agreement are hotly contested by the Defendants, particularly in light of the alleged prosecutorial misconduct of the United States Attorney's Office at the time of Mount's guilty plea. Even Mouton sought after his plea agreement to open discovery to determine if there existed exculpatory materials and to verify that the plea was fairly negotiated based on the alleged prosecutorial misconduct.

At this time, the Defendants have filed a motion to quash or alternatively for a protective order in relation to the subpoena issued by the Plaintiff to Peter Butler, Sr. ("Butler"). Butler provided legal counsel to the Defendants for more than thirty years. R. Doc. 283, p. 1. As such, the Defendants state that the subpoena seeks privileged information. R. Doc. 283-1, p. 3-4. The Defendants further argue that the information is not subject to the crime fraud exception because

Mouton's guilty plea alone is not enough to demonstrate that the Defendants were engaged in a crime. R. Doc. 307, p. 2-3. Moreover, the Defendants also state that the Supreme Court's decisions in *McDonnell v. United States*, 136 S. Ct. 2355 (2016) clarifies that Mouton's actions were not illegal. Finally, the Defendants also argue that the Plaintiff should pursue any discovery of Butler from some other means rather than a deposition, citing by analogy the factors used in determining whether to depose in-house counsel from the *Shelton* case.

In reply, the Plaintiff argue that any privileged communication between Butler or the Defendants in connection with the alleged scheme to target rival landfills would fall under the "crime-fraud" exception. R. Doc. 296, p. 5. In particular, the Plaintiff argues that Butler's communications were in furtherance of the criminal scheme between the Defendants and Mouton. In reply to the Defendants' arguments, the Plaintiff argues that the *McDonnell* opinion is inapposite here as the *McDonnell* case involved the statutory interpretation of two statutes not at issue. The Plaintiff also argues that the *Shelton* factors do not apply here.

**II.     Standard of Review**

Under the attorney-client privilege, "[t]he party asserting privilege bears the burden to show: (1) a confidential communication; (2) to a lawyer or subordinate; (3) for the primary purpose of securing a legal opinion, legal services, or assistance in the legal proceeding" *Vicknair v. Louisiana Dept. of Pub. Safety & Corr.*, 555 F. App'x 325, 333 (5th Cir. 2014) (internal quotation and citation omitted). However, "despite its venerated position, the privilege is not absolute and is subject to several exceptions." *United States v. Edwards*, 303 F.3d 606, 618 (5th Cir. 2002).

"'Under the crime-fraud exception to the attorney-client privilege, the privilege can be overcome where communication or work product is intended to further continuing or future criminal or fraudulent activity.'" *In re Grand Jury Subpoena*, 419 F.3d 329, 335 (5th Cir. 2005)

4

(quoting *Edwards*, 303 F.3d at 618). "As the Fifth Circuit explained, '[t]he test is whether the *client's* purpose is the furtherance of a future fraud or crime. However, this focus on the client's purpose appears to be driven by the fact that *the attorney-client privilege is, of course, held by the client and not the attorney.*'" *In re Chinese Manufactured Drywall Prod. Liab. Litig.*, MDL No. 2047, 2015 WL 7018483, at *2 (E.D. La. Nov. 12, 2015) (quoting *In re Grand Jury Proceedings*, 43 F.3d 966, 972 (5th Cir. 1994)); *see also*, *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 642 (8th Cir. 2001) (internal citations omitted) ("Because the attorney-client privilege benefits the client, it is the client's intent to further a crime or fraud that must be shown. Both the attorney's intent, and the attorney's knowledge or ignorance of the client's intent, are irrelevant.").

"The party seeking to overcome the privilege 'bears the burden of establishing a prima facie case that the attorney-client relationship was intended to further criminal or fraudulent activity.'" *In re Katrina Canal Breaches Consol. Litig.*, No. 05-4182, 2008 WL 4401970, at *10 (E.D. La. Sept. 22, 2008) (quoting *In Re Grand Jury Subpoena*, 419 F.3d at 335). To establish a prima facie case, the party attempting to overcome the privilege "must produce evidence such as will suffice until contradicted and overcome by other evidence ... a case which has proceeded upon sufficient proof to that stage where it will support [a] finding if evidence to the contrary is disregarded." *In re Grand Jury Subpoena*, 419 F.3d at 336. However, mere allegations from the pleadings are insufficient to establish a prima facie case. *Id.*

Finally, the Court notes that the crime-fraud exception is not really an exception but more of "an exclusion of certain activity from the reach of the privileges." *Hunter v. Copeland*, No. 03-2584, 2004 WL 2472487, at *4 (E.D. La. Nov. 1, 2004); *In re Grand Jury Subpoena*, 419 F.3d at 343 ("We conclude that the proper reach of the crime-fraud exception when applicable does not extend to all communications made in the course of the attorney-client relationship, but rather is

5

limited to those communications and documents in furtherance of the contemplated or ongoing criminal or fraudulent conduct."). As such, once there has been a prima facie showing of an alleged crime or fraud, "[t]he party challenging the privilege must…then demonstrate that the privileged information bears a relationship to the alleged crime or fraud." *Ward v. Succession of Freeman*, 854 F.2d 780, 790 (5th Cir. 1988); *Southern Scrap Material Co. v. Fleming*, No. 01-2554, 2003 WL 21474479, at *2 (E.D. La. June 18, 2003) (same).

## III. <u>Analysis</u>

Here, the Plaintiff argues that the information sought in the deposition of Butler is subject to the crime-fraud exception. In particular, the Plaintiff levels this challenge as to Topic No. 2, which seeks ""[a]ll communications between [Butler] and named Defendants, or any person or entity associated with or acting on behalf of the named Defendants, concerning Henry Mouton and any lobbying or related activities regarding the Chef Menteur, Old Gentilly, or Two Rivers landfills from August 29, 2005 to November 31, 2008."

As an initial matter, the Defendants' citation to *Shelton* is inappropriate. Indeed, "the federal courts disfavor depositions of a party's attorney and allow them only in limited circumstances." *Delor v. Intercosmos Media Group, Inc.*, No. 04-3262, 2005 WL 1588300, at *1 (E.D. La. June 27, 2005) (citing *Theriot v. Parish of Jefferson,* 185 F.3d 477, 491 (5th Cir.1999)). Courts in the Fifth Circuit have applied the three-prong test established by the Eighth Circuit in *Shelton v. American Motors Corp.,* to determine circumstances when in-house counsel should be subject to being deposed. *Nguyen v. Excel Corp.,* 197 F.3d 200 (5th Cir.1999). *See Shelton,* 805 F.2d 1323(8th Cir.1986). The *Shelton* factors are: (1) The deponent must show that no other means exist to obtain the information than to depose the opposing counsel; (2) The information sought

must be relevant and non-privileged; and (3) The information sought must be crucial to the preparation of the case. *See Nguyen,* 197 F.3d at 209 (citing *Shelton,* 805 F.2d at 1327).

"However, several courts within the Fifth Circuit have found that when an attorney's role in a case is more akin to a 'mere business advisor,' for a company in an action, he does not constitute 'opposing counsel,' and therefore *Shelton* factors do not warrant an application." *Premier Dealers Servs, Inc. v. Duhon*, No. 12–1498, 2013 WL 5720354 at *4 (E.D. La. Oct. 21, 2013); *see also Advanced Tech. Incubator, Inc., v. Sharp Corp.,* 263 F.R.D. 395, 399 (W.D. Tex. 2009); *Wright v. Life Investors Ins. Co. of America,* 2009 WL 4347024, at *3 (N.D. Miss. Nov. 24, 2009) (finding that *Shelton* factors were not controlling since lawyer acted primarily in a business capacity).

Here, there is no suggestion that Butler is involved as an attorney in the instant matter except to the extent that he worked in advising the Defendants on the underlying matters. As such, his role is closer to business advisor here than as an opposing counsel. *See Premier Dealer Servs., Inc.*, 2013 WL 5720354 at *4.[1] As such, the *Shelton* factors do not apply here. However, to the extent that the Plaintiff seeks to discover otherwise privileged information from Butler, the Court must determine if the crime-fraud exception applies.

To this extent, the Court is left somewhat perplexed by the Plaintiff's argument in that the Plaintiff fails to identify in either its original opposition to the motion to quash or in its supplemental briefing *what particular crime* they allege gives rise to the exception. Rather, the

---

[1] "However, Plaintiff's have not provided the Court with evidence as to Wolery's role in litigation strategy or how he directed the course of this litigation. Furthermore, Wolery is not enrolled in this matter, nor has he been enrolled *pro hac vice* so as to sign or file pleadings into the record. Plaintiffs have also failed to provide an affidavit or sworn testimony of Wolery stating otherwise. Therefore, the Court finds that Wolery's role is not that of trial counsel or opposing counsel, as he is more comparable to a mere business advisor who may be able to provide testimony as to any advice given to Plaintiff on the contract and business negotiation agreement that occurred before litigation began." *Premier Dealer Servs., Inc.*, 2013 WL 5720354 at *4.

7

Plaintiff makes references to the alleged scheme to target rival landfills and to Mouton's guilty plea and appears to hope that the Court will divine what criminal activity the Defendants were engaged in. While the Court is loath to determine on its own what if any crime may be applicable to the alleged conduct, the Court will look to the crime to which Mouton pled guilty as that guilty plea appears to be the loadstone on which the Plaintiff's argument relies.

Mouton pled guilty to one count of conspiracy to commit bribery under 18 U.S.C. § 666(a)(1)(B). R. Doc. 311, p. 6. § 666(a)(1)(B) provides that:

> (a) Whoever, if the circumstance described in subsection (b) of this section exists-
>
>> **(1)** being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof--
>
> ...
>
>> **(B)** corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more; or
>
> ...
> shall be fined under this title, imprisoned not more than 10 years, or both.
>
> **(b)** The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

Of importance in the foregoing statutory framework, "[i]n order for section 666 to apply, the bribe must be offered or accepted 'in connection with any business, transaction, or series of transactions' of the agency receiving federal funds." *United States v. Whitfield*, 590 F.3d 325, 345 (5th Cir. 2009).

Assuming that the Plaintiff is alleging that the Defendants engaged as co-conspirators to the conspiracy to commit this crime, the Court does not find that the Plaintiff has carried its burden to establish a prima facie case. At the time of the alleged bribery, Mouton was a Commissioner of

the Louisiana Department of Wildlife and Fisheries ("LDWF"), an agency of the State of Louisiana that revived more than $10,000 in federal assistance. R. Doc. 296-8, p. 3-4. However, the Plaintiff has not shown or offered anything to show that the Defendants "intended to influence or reward [Mouton] in connection with any business, transaction, or series of transaction of" the LDWF. Rather, the Plaintiffs merely point to a series of letters and other activities undertaken by Mouton at the alleged behest of the Defendants to discourage the development of other landfills.

While Mouton may have included his title while writing these letters, the Court fails to see how these lobbying efforts move from the political to criminal, especially under the criminal statute at issue. Mouton's position as a Commissioner of the LDWF did not encompass any duties relative to landfill permitting. *See* La. Stat. Ann. § 56:6 (2014); *see also*, R. Doc. 296-8 (Factual Basis for Mouton Guilty Plea), p. 4 ("Mouton's office could not directly close or deny an operational permit for the Old Gentilly Landfill"). Given this, while Mouton may have been engaged by the Defendants to lobby against the landfills, the Plaintiff has not shown a conspiracy to influence or reward Mouton in connection with the business of the LDWF. *See Whitfield*, 590 F.3d at 346 (finding no violation of § 666(a)(1)(B) where judges accepted bribes in conjunction with the decision of two judicial decisions which were not related to their role as agents of agency involved with nonjudicial business of court). In fact, this appears to have been a mere continuation of the same lobbying efforts the Defendants apparently engaged Mouton for since the late 1990s.

Note, the Defendants also point to *McDonnell v. United States*, 136 S. Ct. 2355 (2016) as further proof that the Defendants' involvement with Mouton was not illegal. In particular, the Defendants argue that the *McDonnell* case stands for the proposition that a government official cannot have committed bribery unless the government official being bribed actually has authority to exercise governmental powers to benefit the bribed individual. R. Doc. 307, p. 5-6. The Plaintiff

9

argues that the *McDonnell* opinion is inapposite as it should read as limited to the statute the Court interpreted. While the *McDonnell* opinion dealt with the "proper interpretation of the term 'official act'" as defined by 18 U.S.C.§ 201(a)(3), the Court finds that the same underlying rationale applies here. In particular, the *McDonnell* Court sought to interpret what governmental acts fit within "official acts" in light of the concern that public officials should not be subject to prosecution under the law without fair notice. *McDonnell*, 136 S.Ct. 2368-73. Just as the *McDonnell* Court sought to find the contours under the law that shaped the crime, the Court has done so here in determining if the Plaintiff has establish a *prima facie* case of conspiracy to commit bribery under 18 U.S.C. § 666. And, as detailed above, the Court has found the Plaintiff's argument lacking.

Moreover, assuming *arguendo* that the Defendants were engaged in a conspiracy to bribe Mouton in connection with the business of the LDWF, the Court is uncertain that the exclusionary effect of the crime-fraud exception would apply to Butler's communications with the Defendants about Mouton's lobbying efforts as described in Topic 2. The privileged information must bear a relationship to the alleged crime. As such, communications between the Defendants and Butler concerning any lobbying efforts outside of Mouton's authority as a LDWF Commissioner and involving other landfills would not bear the necessary relationship to the crime at issue—conspiracy to commit bribery under 18 U.S.C. § 666—because they would be outside of the prescribed criminal conduct, which requires the "bribe" be made in connection with any business, transaction, or series of transaction of the agency. Here, looking at the ten examples of his involvement listed by the Plaintiff, Butler appears to have been involved in political and not criminal activities. He aided Mouton in drafting letters and other documents as part of Mouton's lobbying efforts. There does not appear to be any allegation that Butler's communications involved any of the alleged payments to Mouton for his work as an LDWF commissioner. As such, those

communications involving the lobbying efforts would not be in furtherance of any crime or fraud such that the exception covers the communications sought. *See*, *In re Grand Jury Subpoena*, 419 F.3d at 344-45 (emphasis added) ("[C]rime-fraud exception does not extend to all communications made in the course of the attorney-client relationship, but rather *must be limited to those communications made and documents produced in furtherance of the ongoing or future crime or fraud*, no longer protected by the privileges."). While the Plaintiff would use the exception—to the extent that it is even applicable—to pierce the entirety of Butler's communications with the Defendants, the crime-fraud exception is not that all-encompassing.

The Court also notes that the Plaintiff makes further vague references to alleged RICO violations and the RICO predicate acts in their motion as well as during oral argument. *See* R. Doc. 296, p. 1. Again, however, the Plaintiff has not laid out the applicable crime or the underlying RICO crime would give rise to the crime-fraud exception other than threadbare allegations, which alone are not enough. *See In re Grand Jury Subpoena*, 419 F.3d at 336. Notably, the underlying crime Mouton pled guilty to a conspiracy to commit—18 U.S.C. 666—is *not* a crime recognized as a "racketeering activity" that would give rise to a criminal violation of RICO. *See* 18 U.S.C. § 1961(1). While there may be some applicable state law bribery crime, the Plaintiff has not presented or argued what that applicable law might be.[2] As such, the Plaintiff has failed to carry its burden, and the motion is further granted for this reason.

Therefore, for the foregoing reasons, the Court grants the Defendant's motion to quash as to deposition Topic No. 2.

## IV. Conclusion

---

[2] And, again, a conclusory allegation from the Plaintiff's Third Amended Complaint—not the instant opposition—that "[t]he River Birch Defendants' payment of bribes to Mr. Mouton violated federal and state law" is not enough.

Accordingly,

**IT IS ORDERED** Defendants' **Motion to Quash Subpoena to Attorney Peter J. Butler, Sr., or Alternatively for a Protective Order (R. Doc. 283)** is **GRANTED** as to Topic No. 2.

New Orleans, Louisiana, this 2nd day of August 17.

_____
**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**