UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WASTE MANAGEMENT OF LOUISIANA, LLC | CIVIL ACTION |
| VERSUS | NO: 11-2405 |
| RIVER BIRCH, INC., ET AL. | SECTION: "J"(4) |

## ORDER & REASONS

Before the Court is a **Motion for Summary Judgment Due to the Mayor's Lack of Authority to Suspend Zoning Laws (Rec. Doc. 469)** filed by defendants River Birch, LLC f/k/a River Birch, Inc., Highway 90, LLC, Frederick R. Heebe, and Albert J. Ward's (collectively, "River Birch"). Plaintiff Waste Management of Louisiana, LLC ("Waste Management") filed an opposition (Rec. Doc. 506), and River Birch replied (Rec. Doc. 515). This Court heard this matter on the briefs and without oral argument. After considering the parties' arguments, the summary judgment record, and the applicable law, the Court will partially grant and partially deny River Birch's motion for the reasons set forth below.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Waste Management filed this civil RICO action, *see* 18 U.S.C. § 1962(c) & (d), against River Birch in 2011, claiming that River Birch "participated in a long-running conspiracy to limit and exclude competition for landfill disposal services in and around New Orleans." (Third Am. Compl. ¶ 2, Rec. Doc. 140). Relevant here is Waste Management's allegation that River Birch bribed Ray Nagin, the former mayor of

New Orleans,[1] to prematurely close the Chef Menteur landfill. Waste Management, which operated the Chef Menteur landfill, asserts this closure caused it to lose business that accrued to the benefit of River Birch, which operated competing landfills.

On August 29, 2005, Hurricane Katrina devastated the New Orleans levee system and caused massive flooding. Two days prior, Mayor Nagin declared a local state of emergency pursuant to La. R.S. 29:727. That statute grants a parish president (or in the case New Orleans/Orleans Parish, the mayor) certain additional powers during the declared emergency. *See* La. R.S. 29:727(F) & 29:723(13). Under the then-existing version La. R.S. 29:727(D), "[N]o state of emergency may continue for longer than thirty days unless extended by the parish president." Nagin renewed the emergency declaration on a monthly basis fifteen times.

Katrina's destruction created a need for additional landfill capacity. In early 2006, Waste Management submitted a proposal to open the Chef Menteur landfill in New Orleans East. Such a landfill would typically require a conditional use permit from the New Orleans City Council. However, on February 9, 2006, Mayor Nagin issued Executive Order CRN 06-03, which purported to suspend portions of the city's

---

[1] As recounted by the Fifth Circuit:

> Nagin was the Mayor of the City of New Orleans from May 2002 to May 2010. In 2013, a federal grand jury returned a 21-count indictment against Nagin, charging him with one count of conspiracy to commit honest-services wire fraud and bribery; six counts of bribery; nine counts of honest-services wire fraud; one count of conspiracy to commit money laundering; and four counts of filing false tax returns. After trial, the jury returned guilty verdicts on all counts of the indictment, except for one count of bribery. The district court sentenced Nagin to ten years in prison.

*Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 961 n.1 (5th Cir. 2019) (citing *United States v. Nagin*, 810 F.3d 348 (5th Cir. 2016)).

2

zoning ordinance so that the Chef Menteur landfill could open without first obtaining a conditional use permit. The Executive Order stated that it would be effective "for a period of six months unless earlier rescinded by me or by other operation of law." (Rec. Doc. 469-7). The Executive Order cited La. R.S. 29:727 and the Mayor's emergency declarations as the source of its authority.

A few days after issuing Executive Order CRN 06-03, Nagin, on behalf of the City of New Orleans, signed an agreement with Waste Management allowing it to open the Chef Menteur landfill without having a conditional use permit in hand on day one. Furthermore, the agreement stated, "As required, Waste Management shall apply for a conditional use permit through the City Planning Commission." (Rec. Doc. 469-18). That same day, the Mayor's office sent the Louisiana Department of Environmental Quality ("LDEQ") an Emergency Disaster Cleanup Site Request, requesting that Chef Menteur landfill operate for the "duration of the Hurricane Katrina disaster cleanup efforts, at this time estimated to be 12 months." (Rec. Doc. 506-14).

On April 6, 2006, the New Orleans City Council issued a unanimous resolution condemning Executive Order CRN 06-03. Noting "overwhelming community opposition" to the Chef Menteur landfill, the City Council "strongly urge[d] Mayor C. Ray Nagin to immediately rescind Executive Order CRN 06-03 and to halt any ongoing negotiations relative to an agreement with Waste Management" to operate the landfill. (Rec. Doc. 469-7). The resolution also urged the LDEQ to disapprove "the permitting application currently under consideration relative to the proposed . . .

landfill." (*Id.*) Despite the City Council's resolution, LDEQ did authorize the Chef Menteur landfill to operate as a "temporary C&D [construction and demolition] disposal facility." (Rec. Doc. 506-22 (emphasis in original)).

The Chef Menteur landfill opened in April 2006. Then, "[o]n July 13, 2006, Nagin announced in a court affidavit—in a lawsuit secretly financed by [River Birch]—that he would not extend his February 9 executive order authorizing the Chef Menteur landfill and would allow it to expire on August 14, 2006." *Waste Mgmt. of La., L.L.C.*, 920 F.3d at 962. As advertised, the Mayor did not renew Executive Order CRN 06-03. On August 14, 2006, the City of New Orleans sent Waste Management a cease and desist letter, effectively closing the Chef Menteur landfill. That same day, Waste Management applied for a conditional use permit for the Chef Menteur landfill. However, Waste Management withdrew its application in January 2007.

Although Nagin allowed Executive Order CRN 06-03 to expire in August 2006, he did renew his emergency declarations for several more months. His last emergency declaration was made on November 3, 3006. Consequently, any emergency powers that existed pursuant to La. R.S. 29:727 terminated on December 3, 2006.

As mentioned, Waste Management filed this civil RICO action in 2011 claiming, inter alia, that River Birch bribed Mayor Nagin to prematurely close the Chef Menteur landfill. The case was assigned to another section of this Court. In 2017, the Court granted summary judgment in favor of River Birch and dismissed Waste Management's claim regarding the Chef Menteur landfill.[2] (Rec. Docs. 372,

---

[2] The parties settled Waste Management's other claims. (*See* Judgment, Rec. Doc. 445).

4

445). Waste Management appealed. In 2019, the Fifth Circuit vacated the dismissal. *Waste Mgmt. of La., L.L.C.*, 920 F.3d at 973. The case was remanded and re-assigned to this section (the district judge originally assigned to this case has been elevated to the Fifth Circuit).

## II.    PRESENT MOTION

River Birch presents two arguments in its motion for summary judgment. First, River Birch contends that the mayor did not have lawful authority to dispense with the need for a conditional use permit; therefore, Executive Order CRN 06-03 was invalid when it issued in February 2006 and could not be lawfully renewed in August 2006. From this premise, River Birch argues that even if it did bribe Nagin, that act could not have caused harm to Waste Management.

River Birch's second argument is made in the alternative. River Birch contends that even if the mayor had authority to suspend city-council zoning requirements, any such authority terminated on December 3, 2006, when Nagin's last emergency declaration expired. Therefore, at a minimum the Court should grant partial summary judgment as to any damages allegedly incurred on or after December 3, 2006, claims River Birch.

## III.    DISCUSSION

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### A. Constitutionality of La. R.S. 29:727 and Executive Order CRN 06-03

Executive Order CRN 06-03 relied on La. R.S. 29:727(F)(1), part of the Louisiana Emergency Assistance and Disaster Act. That statute provides:

> (F) In addition to any other powers conferred upon the [the mayor of New Orleans] by the constitution, laws, or by a home rule charter or plan of government, such authority may do any or all of the following:
>
> (1) Suspend the provisions of any regulatory ordinance prescribing the procedures for conduct of local business, or the orders, rules, or regulations of any local agency, if strict compliance with the provisions of any ordinance, order, rule, or regulation would in any way prevent, hinder, or delay necessary action in coping with the emergency.

River Birch contends that, as applied here, La. R.S. 29:727(F)(1) is unconstitutional; consequently, Executive Order CRN 06-03 was invalid.

New Orleans is governed by a home rule charter. That charter allocated legal authority over zoning issues to the City Council. The city's Comprehensive Zoning Ordinance, which is a product of legislation passed by the City Council, makes the City Council the "final decision-maker" on applications for conditional use permits.

River Birch argues that because the home rule charter pre-existed the state's 1974 constitution, Article VI, Section 4 of the constitution grants the city the power to initiate local legislation and immunity from control by the state legislature. River Birch further contends that Article VI, Section 6 of the constitution prohibits the state legislature from interfering with the powers of a municipal authority governed by a home rule charter. River Birch concludes, then, that "[r]egardless whether La. R.S. 29:727(F)(1) may be constitutionally applied in other scenarios, as applied here, the

6

mayor could not lawfully use it to usurp the City Council's 'final decision-maker' role over the issuance of a conditional use permit." (Mem. in Supp. of Summ. J. at 14, Rec. Doc. 469-1). Consequently, Executive Order CRN 06-03 was invalid when it issued, and the Mayor could not lawfully renew it, urges River Birch.

Waste Management counters that La. R.S. 29:727(F)(1) is constitutional (both on its face and as applied here) and Executive Order CRN 06-03 was a valid exercise of the mayor's emergency powers. However, Waste Management also argues that the Court need not and should not decide the constitutional issue. The Court agrees with the latter argument; therefore, it does not reach the former.

The record is clear that the mayor's authorization of the Chef Menteur landfill and request for LDEQ approval as an Emergency Disaster Clean-up Site were sufficient for the agencies directing the clean-up activity and would have been sufficient for the continued use of the Chef Menteur landfill. Even the City Council's resolution "strong[ly] urg[ing]" Nagin to rescind Executive Order CRN 06-03 omits any suggestion that the mayor acted *ultra vires*. In other words, while the City Council plainly believed Nagin's decision to open the Chef Menteur landfill was unwise, even it appeared to believe that Nagin had the authority to do so.

More to the point, there is no dispute that Waste Management could not have opened the landfill in April 2006 had the mayor not issued Executive Order CRN 06-03. Nor is there any dispute that the immediate reason the landfill closed in August 2006 is because the mayor did not renew the executive order. Lawful or not, the reality in 2006 was that Executive Order CRN 06-03 was the alpha and the omega of

the Chef Menteur landfill. The question for trial is whether "the payment to Nagin was the but for cause and proximate cause of his decision" to not renew the Executive Order and thus "shutter the landfill." *Waste Mgmt. of La., L.L.C.*, 920 F.3d at 965. Even if the Court were to hold, fourteen years later, that Nagin did not have the authority to issue Executive Order CRN 06-03, it would not change the fact that the Chef Menteur landfill rose and fell with Executive Order CRN 06-03. If a jury determines that River Birch made illegal payments to Nagin and those payments are the but for and proximate cause of CRN 06-03's non-renewal, and thus the landfill's closure, then River Birch will be liable to Waste Management—even if it were also determined that Nagin did not have the authority to allow the landfill to open in the first place.

Accordingly, the Court will deny River Birch's motion for summary judgment with respect to its argument that La. R.S. 29:727 and Executive Order CRN 06-03 were unconstitutional and unlawful. The Court does not express any view as to whether La. R.S. 29:727 and/or Executive Order CRN 06-03 are constitutional. *See, e.g.*, *United States v. Int'l Union United Automobile*, 352 U.S. 567, 590 (1957) ("The impressive lesson of history confirms the wisdom of the repeated enunciation, the variously expressed admonition, of self-imposed inhibition against passing on the validity of an Act of Congress unless absolutely necessary to a decision of the case." (internal quotations and citation omitted)).

### B. Waste Management's Damages After December 3, 2006

There is no dispute that the mayoral-declared state of emergency in New

Orleans ended on December 3, 2006. Without a declared state of emergency, Nagin was powerless to exempt Waste Management from the comprehensive zoning ordinance. Therefore, even if River Birch had corruptly persuaded the mayor to no longer exempt the Chef Menteur landfill from the zoning laws, that corruption could have had effect only until December 3, 2006. From that point forward, Waste Management needed a conditional use permit from the City Council in order to operate the Chef Menteur landfill.

Waste Management failed to obtain that permit, and it has no evidence that Defendants' alleged bribery caused this failure. Waste Management applied for a conditional use permit in August 2006, but unilaterally withdrew that application in January 2007. Furthermore, in April 2006, before the allegedly illegal payments to Nagin began, the City Council unanimously condemned Nagin's decision to allow the Chef Menteur landfill to move forward without a permit. No evidence exists that the City Council would have changed its mind.[3]

Consequently, any claimed injury after December 3, 2006, relies on conjecture and speculation that is without any support in the record. There is no genuine dispute that River Birch was not the legal or factual cause of Waste Management's losses after December 3, 2006. Accordingly, the Court will partially grant River Birch's motion for summary judgment.

---

[3] Waste Management cites *Bieter Co. v. Blomquist*, 987 F.2d 1319 (8th Cir. 1993). There, however, the allegedly corrupted mayor actually sat on and voted as a member of the city's five-member council. So did two other allegedly corrupted council members. Here, Nagin did not sit on the City Council; there is no evidence that Nagin influenced the City Council's decision; and as mentioned above, the City Council unanimously voiced its disapproval of the Chef Menteur before the alleged bribes to Nagin were made.

## IV. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that River Birch's Motion for Summary Judgment Due to the Mayor's Lack of Authority to Suspend Zoning Laws (Rec. Doc. 469) is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Waste Management's claim for damages allegedly incurred on or after December 3, 2006 is DISMISSED.

IT IS FURTHER ORDERED that River Birch's Motion is otherwise DENIED.

New Orleans, Louisiana, this 19th day of May, 2020.

_____
United States District Judge