UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WASTE MANAGEMENT OF LOUISIANA, LLC | CIVIL ACTION |
| VERSUS | NO: 11-2405 |
| RIVER BIRCH, INC., ET AL. | SECTION: "J"(4) |

**ORDER & REASONS**

Before the Court is plaintiff Waste Management of Louisiana, LLC's ("Waste Management") Motion for Review of Magistrate Judge's Order Granting, in Part, Defendants' Motion to Quash Subpoena to Peter Butler. (Rec. Doc. 480). Defendants, River Birch, LLC f/k/a River Birch, Inc., Highway 90, LLC, Frederick R. Heebe, and Albert J. Ward (collectively, "River Birch"), filed an opposition (Rec. Doc. 505), and Waste Management replied (Rec. Doc. 514). The motion was submitted on the briefs. After considering the parties' arguments, the relevant record, and the applicable law, the Court grants the motion and reverses the Magistrate Judge's Order of August 2, 2017 (Rec. Doc. 328) for the reasons set forth below.

**I.**

This Order largely assumes the reader's familiarity with this case. Peter Butler, Sr., is an attorney who has counseled River Birch for over thirty years. (Rec. Doc. 505 at 1). He is not counsel of record in this litigation, however. In June 2017, Waste Management issued a subpoena to Butler seeking five categories of documents and testimony covering Butler's participation and knowledge regarding River Birch's alleged conspiracy to shutter Waste Management's landfills. (Rec. Doc. 480-3). River

Birch moved to quash the subpoena in its entirety on the grounds that the information was protected by attorney-client and work product privileges. (Rec. Doc. 283). The Magistrate Judge denied River Birch's motion as to four of the five categories. (Rec. Doc. 309). However, after receiving additional briefing, the Magistrate Judge granted (Rec. Doc. 328) River Birch's motion with respect to Topic No. 2:

> All communications between You [Butler] and the named Defendants, or any person or entity associated with or acting on behalf of the named Defendants, concerning Henry Mouton and any lobbying or related activities regarding the Chef Menteur, Old Gentilly, or Two Rivers landfills from August 29, 2005 to November 31, 2008.

(Rec. Doc. 480-3 at 10).

Waste Management timely objected to this ruling by filing a motion for review with the District Judge then assigned to this case. (Rec. Doc. 347). While that motion was pending, the District Judge granted River Birch's motion for partial summary judgment. (Rec. Doc. 372). That ruling, combined with an earlier decision to partially grant River Birch's Rule 12(b)(6) motion (Rec. Doc. 131), effectively mooted Waste Management's objection to the Magistrate Judge's order. (Rec. Doc. 435). Waste Management appealed the summary judgment and Rule 12(b)(6) rulings to the Fifth Circuit. (Rec. Doc. 446). In 2019, the Circuit vacated the rulings and remanded the case for further proceedings. *Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 963-64, 973 (5th Cir. 2019).[1] Consequently, Waste Management's objection to the Magistrate Judge's ruling regarding the Butler subpoena is no longer moot.

[1] While the appeal was pending, the District Judge originally assigned to the case was elevated to the Fifth Circuit. The case was re-allotted to the undersigned following remand.

**II.**

A district judge may overturn a magistrate's decision on a non-dispositive pretrial matter when the decision is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). Waste Management argued before the Magistrate Judge that the communications between River Birch and Butler fall within the crime-fraud exception to the attorney-client and work product privileges. The Magistrate Judge determined that the crime-fraud exception did not apply and that the communications were privileged. Waste Management contends this decision was clearly erroneous and contrary to law.

"Under the crime-fraud exception to the attorney-client privilege, the privilege can be overcome where communication or work product is intended to further continuing or future criminal or fraudulent activity." *In re Grand Jury Subpoena*, 419 F.3d 329, 335 (5th Cir. 2005) (quotations and citation omitted). "In order to invoke [the crime-fraud] exception, the party seeking to breach the walls of privilege must make out a prima facie case." *Id.* at 336 (quotations and citation omitted). This means Waste Management "'must produce evidence such as will suffice until contradicted and overcome by other evidence . . . [or, in other words,] a case which has proceeded upon sufficient proof to that stage where it will support [a] finding if evidence to the contrary is disregarded.'" *In re Katrina Canal Breaches Consol. Litig.*, No 05-4182, 2008 WL 4401970 at *11 (E.D. La. Sept. 22, 2008) (quoting *In re Grand Jury Proceedings*, 641 F.2d 199, 203 (5th Cir. 1981)) (alterations supplied by *Katrina Canal Breaches*; emphasis omitted). "The burden of establishing a prima facie case of crime

for this purpose in the civil discovery context is not great and is certainly less than the standard that a district attorney or other prosecutor would use in pursuing criminal charges." *Id.* at *10. Waste Management need not "establish the essential elements of a crime or fraud beyond a reasonable doubt, since the crime-fraud exception does not require a completed crime or fraud but only that the client have consulted the attorney in an effort to complete one." *Id.* "After the party seeking disclosure meets its prima facie showing that the client intended to further an ongoing crime or fraud during the attorney-client relationship such that the crime-fraud exception applies, the only attorney-client communications and work product materials falling within the scope of the crime-fraud exception are those shown to hold 'some valid relationship' to the prima facie violation such that they 'reasonably relate to the fraudulent [or criminal] activity.'" *In re Grand Jury Subpoena*, 419 F.3d at 346 (italics omitted; citations omitted).

When the Magistrate Judge considered the parties' arguments regarding the crime-fraud exception, she did not have the benefit of the Fifth Circuit's subsequent decision in this case. That decision looms large here.

As mentioned, Waste Management seeks to depose Butler regarding communications between him and River Birch (or others acting on River Birch's behalf) concerning Henry Mouton and any lobbying or related activities regarding the Chef Menteur landfill from August 29, 2005 to November 31, 2008. Henry Mouton was a commissioner for the Louisiana Department of Wildlife and Fisheries from 2003 to 2008. In 2011, Mouton pled guilty to a conspiracy to violate 18 U.S.C. §

666(a)(1)(B), which prohibits a local official in a program that receives $10,000 in federal funds from "accept[ing] or agree[ing] to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more." As recounted by the Fifth Circuit:

> [Mouton] admit[ted] that he received bribes for using his official position to assist [River Birch] by influencing public officials to help [River Birch] shutter landfill competitors. Relevant here, Mouton's factual basis supporting his guilty plea provides:
>
> > Shortly after Hurricane Katrina made landfall in August of 2005, Co-conspirator "A" and other Co-conspirators recognized the potential to obtain millions of dollars in revenue for the collection and disposal of storm debris from storm ravaged areas. . . . Co-conspirator "A" conspired with Mouton to shutter the competition. The plan was to eliminate the competition and increase the revenue of Co-conspirator "A" by increasing the amount of storm debris deposited in the landfills owned by Co-conspirator "A."
>
> Mouton confirmed at his deposition in this case that Co-conspirator "A" was Defendant Heebe and that the Chef Menteur landfill was one of the landfills that was targeted as part of the scheme he had with Heebe. Moreover, ***as part of the campaign of [River Birch] to shutter the Chef Menteur landfill, Mouton testified that Heebe and [Defendant] Ward, <u>or their attorneys</u>, wrote or assisted in drafting a letter for Mouton to send to the Louisiana Department of Environmental Quality, as well as federal agencies, urging the closure of the Chef Menteur landfill for alleged environmental reasons.*** Mouton, presumably for the benefit of [River Birch], also sent copies of the letter to the City of New Orleans.
>
> . . . Defendants and Mouton knew that [Mayor C. Ray] Nagin was the critical decision-maker who had authority to either extend or decline to extend the temporary order allowing the Chef Menteur landfill to continue operations.[2] A jury could therefore conclude that Mouton's communication of allegedly false environmental concerns about the landfill to state and federal agencies was designed to have these

[2] *See also* Order & Reasons of May 20, 2020 at 7-8, Rec. Doc. 523.

> government agencies influence Nagin to shut down the landfill. Because Mouton's action in this respect could be seen as part of the overall plan to shutter the Chef Menteur landfill, evidence of [River Birch's] conduct in bribing Mouton to participate is intrinsic to this case.

*Waste Mgmt. of La., L.L.C.*, 920 F.3d at 966-67 (footnote omitted) (emphasis added).

Consistent with the emphasized language in the Fifth Circuit's opinion, Waste Management presents evidence indicating that River Birch directed Butler to ghost-write multiple letters attacking River Birch's competitors' landfills, including but not limited to the Chef Menteur landfill. These letters were submitted by Mouton in his own name and sought to capitalize on his role as a state Fish and Wildlife Commissioner. These letters were sent to a variety of state and federal government officials. As determined by the Fifth Circuit, "A jury could therefore conclude that Mouton's communication of allegedly false environmental concerns about the landfill to state and federal agencies was designed to have these government agencies influence Nagin to shut down the landfill." *Id.* at 967.

River Birch argues that under *McDonnell v. United States*, 136 S. Ct. 2355 (2016), which was decided after Mouton was convicted, the crime-fraud exception is not applicable because any payments River Birch made to Mouton could not result in an "official act," given that the Louisiana Department of Wildlife and Fisheries did not control landfills. In other words, River Birch contends that even if it did pay Mouton to secretly lobby on its behalf, and even if Butler helped further these efforts, no crime was committed. However, *McDonnell* interpreted 18 U.S.C. § 201, which is different from the statute to which Mouton pled. Unlike § 201, 18 U.S.C. §

666(a)(1)(B) does not mention or require "official acts."[3] Instead, § 666(a)(1)(B) prohibits a local official in a program that receives $10,000 in federal funds from accepting a payment "in connection with any business, transaction, or series of transactions of [the local official's] organization, government, or agency."

The conduct upon which Mouton's plea is based is that River Birch paid Mouton hundreds of thousands of dollars in exchange for his secret, unreported advocacy on their behalf using the influence of his official state position. (*See* Factual Basis of Mouton's Guilty Plea, Rec. Doc. 480-15). The evidence presented supports Waste Management's claim that Mouton traded on his title and role as an allegedly independent state official focused on conservation and environmental issues. Indeed, all of the letters submitted with the instant motion immediately call the reader's attention to the fact that Mouton was then member of the state Wildlife and Fisheries Commission. For example, on or around June 19, 2006, Mouton sent an eight-page letter (Rec. Doc. 480-7), which appears to have been drafted by Butler at River Birch's behest (*see* Rec. Doc.480-9), to the District Commander of the U.S. Army Corps of Engineers. At the top of the letter appears:

HENRY R. MOUTON
COMMISSIONER
LOUISIANA DEPT. of WILDLIFE AND FISHERIES

[3] Section 201 further defines "official act" to mean "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit." *McDonnell*, 236 S. Ct. at 2367 (quoting 18 U.S.C. § 201(a)(3)). This language was key to the Supreme Court's interpretation of § 201. *See id.* at 2371-72.

The first line of the letter reads, "As a member of the Louisiana Department of Wildlife and Fisheries Commission, I am writing to you in my individual capacity as a citizen of the State of Louisiana and as a party who is committed to the environmental health of the Bayou Savauge Wildlife Refuge . . . situated adjacent to the recently opened . . . Chef Menteur Dump." (Rec. Doc. 480-7).[4] The record reflects that this letter prompted a meeting eight days later between Mouton, the Army Corps District Commander, the Regional Director of the U.S. Fish and Wildlife Service, the Director of the Louisiana office of the U.S. Fish and Wildlife Service, as well as an attorney and two engineers for the Corps. According to Mouton's lengthy notes from that meeting—which he emailed directly to defendant Heebe and attorney Butler the next morning—the District Commander stated at the end of the meeting that "unless there is something that he has NOT seen, he sees NO reason why he would NOT shut down Chef [Menteur landfill] in the next week or so if not earlier." (Rec. Doc. 480-8 at 3 (emphasis in original); *see also* Rec. Doc. 480-10). The Court finds that this episode combined with the other evidence in the record establish a prima facie case that River Birch paid Mouton in exchange for "any business" of Mouton's public office in violation of § 666(a)(1)(B), and that Butler aided and furthered this violation.

[4] Other letters do not even bother to claim that Mouton was acting in his "individual capacity." For example, on November 4, 2005, Butler drafted a letter that Mouton sent to seventeen U.S. Senators, including the Chairman of the Senate Committee on Environment and Public Works, that advocated closing the Old Gentilly landfill. The letter begins, "I am writing this letter to you as a member of the Louisiana Department of Wildlife & Fisheries. As a member of this Department, I believe I have some responsibility as a caretaker of the environment in Louisiana." (Rec. Doc. 480-13).

Additionally, *McDonnell* noted that "if a public official uses his official position to provide advice to another official, knowing or intending that such advice will form the basis for an 'official act' by another official, that too can qualify as a decision or action for purposes of § 201(a)(3)." *Id.* at 2370. Therefore, even if *McDonnell*'s interpretation does apply to 18 U.S.C. § 666(a)(1)(B), the evidence in the record would still support Mouton's conviction. *See also Waste Mgmt. of La., L.L.C.*, 920 F.3d at 967 ("A jury could therefore conclude that Mouton's communication of allegedly false environmental concerns about the landfill to state and federal agencies was designed to have these government agencies influence Nagin to shut down the landfill.").

In analyzing the crime-fraud exception, the central issue is whether Waste Management raised a prima facie case that River Birch used Butler's advice in furtherance of an ongoing or future crime or fraud. Waste Management is not required to prove beyond a reasonable doubt that a crime was committed, and the standard is less in a civil case than it would be in a criminal prosecution. Considering the evidence presented, particularly in light of the Fifth Circuit's opinion (which, again, was not rendered until after the Magistrate Judge ruled), the Court is left with a definite and firm conviction that a mistake was made and Waste Management's objections should be sustained.

Finally, the Court acknowledges that it previously ruled that no further discovery would be permitted in this case. (Rec. Doc. 462). However, the Court finds that the present circumstances warrant a deviation from this decree. Waste

Management may take Butler's deposition, provided that the deposition is concluded by no later than June 30, 2020.

**III.**

Accordingly,

IT IS ORDERED that Waste Management's Motion for Review (Rec. Doc. 480) is GRANTED, and the Magistrate Judge's Order of August 2, 2017 (Rec. Doc. 328) is REVERSED.

IT IS FURTHER ORDERED that Waste Management may depose Peter Butler, Sr., and seek document production from him as to Topics 1, 2, 3, and 5 listed in Waste Management's original subpoena.[5] (*See* Rec. Doc. 480-3 at 10). The deposition shall be concluded by no later than June 30, 2020.

New Orleans, Louisiana, this 4th day of June, 2020.

United States District Judge

[5] Topic No. 4 of Waste Management's subpoena is no longer relevant following the parties' partial settlement in this case.